ORAL ARGUMENT NOT YET SCHEDULED

Nos. 22-3038, 22-3039 & 22-3041

# In the United States Court of Appeals for the District of Columbia Circuit

————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*

v.

JOSEPH FISCHER, EDWARD LANG, AND GARRET MILLER,

*Defendants-Appellees*

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
D. CT. NOS. 1:21-CR-53, 1:21-CR-119, 1:21-CR-234 (NICHOLS, J.)

————————

APPELLANT'S CONSOLIDATED BRIEF FOR THE UNITED STATES

————————

MATTHEW M. GRAVES
   United States Attorney
   District of Columbia

JOHN CRABB JR.
   Chief, Capitol Siege Section
   District of Columbia

KENNETH A. POLITE
   Assistant Attorney General

LISA H. MILLER
   Deputy Assistant Attorney
   General

JAMES I. PEARCE
   Appellate Counsel, Capitol
   Siege Section
   Criminal Division
   U.S. Department of Justice
   950 Pennsylvania Ave., N.W.
   Washington, DC 20530
   (202) 532-4991
   James.Pearce@usdoj.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Cir. R. 28(a)(1), the undersigned certifies as follows:

### A.    Parties and Amici

The parties that appeared in the district court and that are now before this Court are the United States (appellant) and Joseph Fischer, Edward Lang, and Garret Miller (defendants-appellees).  There are no amici curiae or intervenors.

### B.    Rulings Under Review

The government seeks review of the orders of the district court (Nichols, J.) that dismissed counts charging obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), in three separately prosecuted cases:

- *United States v. Miller*, No. 21-cr-119, ECF No. 72, 2022 WL 823070 (D.D.C. Mar. 7, 2022) (App.90-118), motion for reconsideration denied by ECF 86, 2022 WL 1718984 (D.D.C. May 27, 2022) (App.397-408);

- *United States v. Fischer*, No. 21-cr-234, ECF No. 64, 2022 WL 782413 (D.D.C. Mar. 15, 2022) (App.502-11), motion for

reconsideration denied by Minute Order (May 30, 2022) (App.421); and

- *United States v. Lang*, No. 21-cr-53, Minute Order (D.D.C. June 7, 2022) (App.12).

## C.   Related Cases

None of these cases has previously been before this Court or any other court.   Numerous defendants prosecuted in the United States District Court for the District of Columbia under 18 U.S.C. § 1512(c)(2) in connection with the attack on the United States Capitol on January 6, 2021, have raised "substantially the same or similar issues," *see* D.C. Cir. R. 28(a)(1)(C), but none of those defendants has prevailed on those challenges.   Counsel is not aware of any other cases presenting "substantially the same or similar issues" currently pending before this Court.

s/ James I. Pearce
JAMES I. PEARCE
    Appellate Counsel, Capitol Siege Section
    Criminal Division
    U.S. Department of Justice

ii

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ v

GLOSSARY OF ABBREVIATIONS ..................................................... xiv

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUES ............................................................. 1

STATEMENT OF STATUTES AND REGULATIONS .......................... 2

STATEMENT OF THE CASE ................................................................. 2

    A.   Statement of facts ......................................................... 2

    B.   Procedural history ...................................................... 11

SUMMARY OF ARGUMENT ................................................................ 14

ARGUMENT ........................................................................................ 16

    I.   Obstruction of an official proceeding, in violation of
       18 U.S.C. § 1512(c)(2), covers the defendants' alleged
       conduct on January 6, 2021. ................................................ 16

       A.   Section 1512(c)(2)'s text, structure, and history
           confirm that its prohibition covers obstructive
           conduct unrelated to documentary evidence. ............. 18

           1.   Section 1512(c)'s text and structure confirm
               that Section 1512(c)(2) is not limited to
               document-related obstructive conduct ............... 19

           2.   The term "otherwise" reinforces that Section
               1512(c)(2) covers obstructive conduct "other"
               than the document destruction covered in
               Section 1512(c)(1) ............................................ 26

           3.   Tools of statutory interpretation do not
               support the district court's narrowed
               interpretation ................................................... 37

4.    Legislative history does not support the district court's narrowed interpretation............44

B.    Section 1512(c)(2)'s *mens rea* and nexus requirements limit the statute's reach. ...................... 48

C.    The district court incorrectly applied the rule of lenity. ......................................................... 54

D.    Even if Section 1512(c)(2) required that the obstructive act relate to documentary evidence, the defendants' conduct would be covered.................. 59

II.   Even under the district court's narrowed interpretation of Section 1512(c)(2), dismissal was improper.................................................................. 61

CONCLUSION.................................................................. 68

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

STATUTORY ADDENDUM

# TABLE OF AUTHORITIES

## Cases

*Ali v. Fed. Bureau of Prisons,*
    552 U.S. 214 (2008) .......................................................................... 32

*Arthur Andersen LLP v. United States,*
    544 U.S. 696 (2005) ................................................. 5, 47, 50, 52-53, 55

*Barber v. Thomas,*
    560 U.S. 474 (2010) .......................................................................... 56

*Begay v. United States,*
    553 U.S. 137 (2008) ................................................... 15, 30-31, 34-36

*Bell v. United States,*
    349 U.S. 81 (1955) ............................................................................ 55

*Bostock v. Clayton County, Georgia,*
    140 S. Ct. 1731 (2020) ..................................................................... 39

*Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.,*
    331 U.S. 519 (1947) .......................................................................... 45

*Collazos v. United States,*
    368 F.3d 190 (2d Cir. 2004) ............................................................. 27

*Connecticut Nat'l Bank v. Germain,*
    503 U.S. 249 (1992) .......................................................................... 40

*Dean v. United States,*
    556 U.S. 568 (2009) .......................................................................... 22

*Freytag v. Comm'r,*
    501 U.S. 868 (1991) .......................................................................... 42

*Gooch v. United States,*
    297 U.S. 124 (1936) .......................................................................... 27

*Hamling v. United States*,
    418 U.S. 87 (1974) ................................................................ 62

*Hubbard v. United States*,
    514 U.S. 695 (1995) .............................................................. 26

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999) .............................................................. 44

*Johnson v. United States*,
    576 U.S. 591 (2015) .............................................................. 36

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019) .......................................................... 56

*Lawson v. FMR LLC*,
    571 U.S. 429 (2014) .............................................................. 19

*Liparota v. United States*,
    471 U.S. 419 (1985) .............................................................. 55

*Loughrin v. United States*,
    573 U.S. 351 (2014) ..........................................................33, 39

*Marinello v. United States*,
    138 S. Ct. 1101 (2018) ..............................20, 48, 53-54, 65

*Marx v. Gen. Revenue Corp.*,
    568 U.S. 371 (2013) .............................................................. 42

*Muscarello v. United States*,
    524 U.S. 125 (1998) .............................................................. 56

*National Ass'n of Mfrs. v. Department of Defense*,
    138 S. Ct. 617 (2018) ........................................................... 19

*Ocasio v. United States*,
    578 U.S. 282 (2016) .............................................................. 56

*Pasquantino v. United States*,
  544 U.S. 349 (2005) ..................................................................... 40

*Republic of Iraq v. Beaty*,
  556 U.S. 848 (2009) ..................................................................... 39

*Trump v. Thompson*,
  20 F.4th 10 (D.C. Cir. 2021) ........................................................... 8

*United States v. Caldwell*,
  No. 21-cr-28, 2021 WL 6062718 (D.D.C. Dec. 20, 2021) ........ 18, 31, 35

*United States v. McHugh*,
  No. 21-cr-453, 2022 WL 1302880
  (D.D.C. May 2, 2022) ................................. 17, 24, 33, 35, 40-41, 43, 47

*United States v. Williams*,
  No. 21-cr-618, 2022 WL 2237301 (D.D.C. June 22, 2022) ............... 17

*United States v. Aguilar*,
  515 U.S. 593 (1995) ................................................... 23, 33, 52, 54, 66

*United States v. Ahrensfield*,
  698 F.3d 1310 (10th Cir. 2012) ....................................................... 25

*United States v. Ali*,
  718 F.3d 929 (D.C. Cir. 2013) ......................................................... 42

*United States v. Ali*,
  885 F.Supp.2d 17 (D.D.C. 2012), *reversed in part*,
  718 F.3d 929 (D.C. Cir. 2013) ......................................................... 65

*United States v. Bass*,
  404 U.S. 336 (1971) ....................................................................... 55

*United States v. Bingert*,
  No. 21-cr-91, 2022 WL 1659163 (D.D.C. May 25, 2022) ................... 17

*United States v. Brown*,
  688 F.2d 596 (9th Cir. 1982) ........................................................... 23

*United States v. Burge*,
    711 F.3d 803 (7th Cir. 2013) ...........................................20, 25-26, 44

*United States v. Butler*,
    822 F.2d 1191 (D.C. Cir. 1987)........................................................ 63

*United States v. Carson*,
    560 F.3d 566 (6th Cir. 2009) .......................................................... 25

*United States v. Cervantes*,
    No. 16-10508, 2021 WL 2666684 (9th Cir. June 29, 2021) .............. 25

*United States v. De Bruhl-Daniels*,
    491 F.Supp.3d 237 (S.D. Tex. 2020)................................................. 37

*United States v. Debrow*,
    346 U.S. 374 (1953) ........................................................................ 63

*United States v. Erickson*,
    561 F.3d 1150 (10th Cir. 2009)....................................................... 51

*United States v. Espy*,
    145 F.3d 1369 (D.C. Cir. 1998)....................................................... 32

*United States v. Fitzsimons*,
    No. 21-cr-158, 2022 WL 1698063 (D.D.C. May 26, 2022) ......17, 22, 29

*United States v. Frank*,
    354 F.3d 910 (8th Cir. 2004) .......................................................... 23

*United States v. Friske*,
    640 F.3d 1288 (11th Cir. 2011)....................................................... 53

*United States v. Grider*,
    No. 21-cr-22, 2022 WL 392307 (D.D.C. Feb. 9, 2022) ...................... 18

*United States v. Haldeman*,
    559 F.2d 31 (D.C. Cir. 1976)........................................................... 62

*United States v. Hillie,*
   227 F.Supp.3d 57 (D.D.C. 2017)........................................................ 63

*United States v. Howard,*
   569 F.2d 1331 (5th Cir. 1978)........................................................... 28

*United States v. Hutcherson,*
   No. 05-cr-39, 2006 WL 270019 (W.D. Va. Feb. 3, 2006).................... 36

*United States v. Jeter,*
   775 F.2d 670 (6th Cir. 1985) ........................................................... 48

*United States v. Lefkowitz,*
   125 F.3d 608 (8th Cir. 1997) ........................................................... 23

*United States v. Lester,*
   749 F.2d 1288 (9th Cir. 1984)........................................................... 23

*United States v. Lonich,*
   23 F.4th 881 (9th Cir. 2022) ........................................................... 50

*United States v. Martinez,*
   862 F.3d 223 (2d Cir. 2017), *vacated on other grounds,*
   139 S. Ct. 2772 (2019) ..................................................................... 25

*United States v. Montgomery,*
   No. 21-cr-46, 2021 WL 6134591
   (D.D.C. Dec. 28, 2021) ................................... 18, 20, 22, 28, 35, 47, 51

*United States v. Mostofsky,*
   No. 21-cr-138, 2021 WL 6049891 (D.D.C. Dec. 21, 2021) ................. 18

*United States v. Nordean,*
   No. 21-cr-175, 2021 WL 6134595 (D.D.C. Dec. 28, 2021) ............18, 41

*United States v. North,*
   910 F.2d 843 (D.C. Cir. 1990), *withdrawn and superseded in
   part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990)... 49-51

*United States v. Petruk,*
    781 F.3d 438 (8th Cir. 2015) ...................................................24, 26, 28

*United States v. Phillips,*
    583 F.3d 1261 (10th Cir. 2009)......................................................... 25

*United States v. Poindexter,*
    951 F.2d 369 (D.C. Cir. 1991)......................................................41, 49

*United States v. Pope,*
    613 F.3d 1255 (10th Cir. 2010)......................................................... 64

*United States v. Puma,*
    No. 21-cr-454, 2022 WL 823079 (D.D.C. Mar. 19, 2022)........18, 28, 57

*United States v. R.L.C.,*
    503 U.S. 291 (1992) ....................................................................... 55

*United States v. Reffitt,*
    No. 21-cr-32, 2022 WL 1404247 (D.D.C. May 4, 2022) ..................... 58

*United States v. Resendiz-Ponce,*
    549 U.S. 102 (2007) ....................................................................... 62

*United States v. Ring,*
    628 F.Supp.2d 195 (D.D.C. 2009)....................................27, 31, 37, 53

*United States v. Robertson,*
    No. 21-cr-34, 2022 WL 2438546 (D.D.C. July 5, 2022) ..................... 17

*United States v. Sandlin,*
    No. 21-cr-88, 2021 WL 5865006 (D.D.C. Dec. 10, 2021) ..18, 30, 41, 51

*United States v. Singleton,*
    No. 06-cr-80, 2006 WL 1984467 (S.D. Tex. July 14, 2006) ............... 36

*United States v. Sussman,*
    709 F.3d 155 (3d Cir. 2013)............................................................. 23

*United States v. Vastardis*,
    19 F.4th 573 (3d Cir. 2021) ............................................................. 24

*United States v. Volpendesto*,
    746 F.3d 273 (7th Cir. 2014) ......................................................25, 28

*United States v. Watters*,
    717 F.3d 733 (9th Cir. 2013) ........................................................... 49

*United States v. Williamson*,
    903 F.3d 124 (D.C. Cir. 2018)........................................................... 62

*United States v. Wiltberger*,
    18 U.S. (5 Wheat.) 76 (1820) ........................................................... 58

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994) ........................................................................... 42

*United States v. Yakou*,
    428 F.3d 241 (D.C. Cir. 2005)........................................................... 64

*United States v. Young*,
    916 F.3d 368 (4th Cir. 2019) ......................................................51, 53

*Whitman v. American Trucking Assns., Inc.*,
    531 U.S. 457 (2001) ......................................................................... 39

*Wooden v. United States*,
    142 S. Ct. 1063 (2022) ........................................................31, 56, 58

*Yates v. United States*,
    574 U.S. 528 (2015) ................................................ 5, 22, 32, 39, 41, 65

*Young v. United States*,
    943 F.3d 460 (D.C. Cir. 2019)........................................................... 56

## Statutes and Constitutional Provisions

U.S. Const. amend. XII ................................................................. 6

U.S. Const. art. II, § 1 ................................................................. 6

U.S. Const. art. II, § 1, cl. 3 ........................................................ 6

3 U.S.C. § 5 ............................................................................... 7

3 U.S.C. § 6 ............................................................................... 7

3 U.S.C. § 7 ............................................................................... 7

3 U.S.C. § 11 ............................................................................. 7

3 U.S.C. § 15 ........................................................................... 7, 8

3 U.S.C. § 16 ............................................................................. 8

18 U.S.C. § 111 ........................................................................ 11

18 U.S.C. § 924 ........................................................................ 30

18 U.S.C. § 1341 ...................................................................... 33

18 U.S.C. § 1344 ...................................................................... 33

18 U.S.C. § 1503 ............................................................. 23, 28, 66

18 U.S.C. § 1505 ...................................................................... 23

18 U.S.C. § 1512 ..... 1, 2-3, 5-6, 11-20, 27, 37-38, 41, 43, 46, 48, 52, 58-59

18 U.S.C. § 1515 ............................................................... 3, 17, 26

18 U.S.C. § 1519 ............................................................... 4-5, 32, 66

18 U.S.C. § 1520 ...................................................................... 4-5

18 U.S.C. § 1651 ...................................................................... 65

18 U.S.C. § 3231.......................................................................... 1

18 U.S.C. § 3731.......................................................................... 1

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745...3, 5, 45

Victim and Witness Protection Act of 1982, Pub. L. No. 97-291, 96
    Stat. 1248 ......................................................................... 3-4

## Other Authorities

148 Cong. Rec. S6550 (daily ed. July 10, 2002)...........................5, 44, 47

Oxford English Dictionary...............................................20, 26

S. Rep. No. 107-146 (2002)................................................... 4-5

## Rules

Fed. R. Crim. P. 7............................................................. 62-63

Fed. R. Crim. P. 12............................................................. 64

## GLOSSARY OF ABBREVIATIONS

App.        Appellant's Appendix

## JURISDICTIONAL STATEMENT

This is a government appeal from three orders granting motions to dismiss a charged offense filed by Defendants-Appellees Joseph Fischer, Edward Lang, and Garret Miller. The district court (Nichols, J.) had jurisdiction under 18 U.S.C. § 3231. In Miller's case, the district court entered an order granting the dismissal motion on March 7, 2022, and an order denying the government's reconsideration motion on May 27, 2022. App.90-118, 397-408. In Fischer's case, the district court entered an order granting the dismissal motion on March 15, 2022, and an order denying the government's reconsideration motion on May 30, 2022. App.421, 502-11. In Lang's case, the district court entered an order granting the dismissal motion on June 7, 2022. App.12. The government filed a timely notice of appeal in all three cases on June 22, 2022. App.58, 409, 512. This Court has jurisdiction under 18 U.S.C. § 3731.

## STATEMENT OF THE ISSUES

1. Whether the district court incorrectly held that 18 U.S.C. § 1512(c)(2), which makes it a crime for a defendant to corruptly obstruct, influence, or impede an official proceeding, does not cover the defendants'

alleged conduct of obstructing Congress's certification of the Electoral College vote on January 6, 2021.

2.   Whether the district court incorrectly dismissed a Section 1512(c)(2) count that tracked the statutory language, described the congressional certification proceeding that the defendant was alleged to have obstructed, stated the place of the alleged offense, and identified the single day on which the offense was alleged to have occurred.

## STATEMENT OF STATUTES AND REGULATIONS

Pertinent statutes and regulations are produced in an addendum bound with this brief.

## STATEMENT OF THE CASE

A grand jury separately indicted Fischer, Lang, and Miller for several offenses, including a violation of 18 U.S.C. § 1512(c)(2), in connection with their participation in the attack on the United States Capitol on January 6, 2021.   Each defendant moved to dismiss the Section 1512(c)(2) count.   The district court (Nichols, J.) granted the motions.

### A.    Statement of facts

1.  Congress enacted a prohibition on "Tampering with a record or otherwise impeding an official proceeding" in Section 1102 of the

2

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, 807, and

codified it in Chapter 73 (Obstruction of Justice) as subsection (c) of the

pre-existing Section 1512.  That prohibition applies to

> (c) [w]hoever corruptly--
>> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.

18 U.S.C. § 1512(c).  Another provision defines "official proceeding" to

include a "proceeding before the Congress."  18 U.S.C. § 1515(a)(1)(B).

When Congress in 1982 originally enacted Section 1512, it did not

include what is now Section 1512(c).  *See* Victim and Witness Protection

Act of 1982, Pub. L. No. 97-291, § 4(a), 96 Stat. 1248, 1249-50.  Its title

then, as now, was "Tampering with a witness, victim, or an informant."

*Id.*; 18 U.S.C. § 1512.  As that title suggested, Section 1512 as originally

enacted targeted conduct such as using intimidation, threats, or corrupt

persuasion to prevent *others* from testifying or communicating

information to law enforcement or the courts as well as intentionally

harassing *another person* to hinder, delay, or prevent that person from

taking certain actions.  *See* Pub. L. No. 97-291, § 4(a) (now codified as Section 1512(b) and Section 1512(d)).

Twenty years later, following the collapse of the Enron Corporation, Congress passed the Sarbanes-Oxley Act.  That legislation, which principally aimed to "prevent and punish corporate and criminal fraud, protect the victims of such fraud, preserve evidence of such fraud, and hold wrongdoers accountable for their actions," S. Rep. No. 107-146, at 2 (2002), included several different provisions.  Foremost among them were two new criminal statutes, 18 U.S.C. §§ 1519 and 1520, which were intended to "clarify and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation of financial and audit records." S. Rep. No. 107-146, at 14.  Although the Sarbanes-Oxley Act's legislative history provides limited explanation of Congress's objective in enacting Section 1512(c), it was most likely also added to close a loophole:  As noted in the Senate Judiciary Committee Report, the pre-existing prohibition in Section 1512(b) made it a crime to induce "another person to destroy documents, but not a crime for a person to destroy the same documents personally"—a limitation that "forced" prosecutors to "proceed under the legal fiction that the defendants [in

then-pending *United States v. Arthur Andersen*] are being prosecuted for telling other people to shred documents, not simply for destroying evidence themselves." *Id.* at 6-7. Similarly, Senator Hatch observed that the legislation "broaden[ed]" Section 1512 by permitting prosecution of "an individual who acts alone in destroying evidence." 148 Cong. Rec. S6550 (daily ed. July 10, 2002) (statement of Sen. Hatch).

Congress thus enacted two new provisions as Section 1512(c): Section 1512(c)(1) prohibits various modes of tampering with a "record, document, or other object," and Section 1512(c)(2) penalizes anyone who "otherwise obstructs, influences, or impedes any official proceeding." Unlike the specialized prohibitions found in Sections 1519 and 1520, Section 1512(c) was placed among the "broad proscriptions" in the "pre-existing" Section 1512. *Yates v. United States*, 574 U.S. 528, 541 (2015) (plurality opinion). And although Section 1512(c) as enacted in the Sarbanes-Oxley Act recognized two distinct prohibitions, *see* Pub. L. No. 107-204, § 1102, 116 Stat. 807 ("Tampering with a record *or* otherwise impeding an official proceeding") (emphasis added; capitalization altered), Congress did not amend Section 1512's title. That title, "Tampering with a witness, victim, or an informant," § 1512, thus

encompassed the pre-existing provisions aimed at a defendant's obstructive conduct directed toward another person but did not reflect the newly enacted prohibitions in Section 1512(c) that criminalized a defendant's own obstructive act, either through destroying documents (Section 1512(c)(1)) or otherwise impeding an official proceeding (Section 1512(c)(2)).

2.a.    Under the Constitution, every four years, state-appointed "Electors," equal to the number of Senators and Representatives for that state, "vote by ballot" for the President and the Vice President of the United States.  U.S. Const. art. II, § 1.  After voting in their respective states, the Electors sign, seal, and transmit their votes to the President of the Senate.  *Id.* cl. 3; U.S. Const. amend. XII.  Thereafter "[t]he President of the Senate shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted[; t]he Person having the greatest Number of Votes shall be the President."  U.S. Const. art. II, § 1, cl. 3.

The Electoral Count Act of 1887, 3 U.S.C. § 1 *et seq.*, supplies additional details about electoral voting in the states and the certification proceeding in Congress.  For example, under the Act, the Electors must

6

be appointed no later than six days before they meet to cast their votes, *id.* § 5, and the executive of the state must send the Archivist a certificate of ascertainment identifying the appointed electors, *id.* § 6. The appointed electors then vote for President and Vice President on the first Monday after the second Wednesday of December, *id.* § 7, and send their sealed certificates of vote to the President of the Senate. *Id.* § 11. The Act describes in detail the counting of those votes in Congress. It identifies the certification proceeding's date ("the sixth day of January"), the time ("1 o'clock in the afternoon on that day") and place ("the Hall of the House of Representatives"). *Id.* § 15. It further identifies the required attendees (the "Senate and House of Representatives shall meet in the Hall") and the "presiding officer" (the "President of the Senate"). *Id.* The Act spells out the presiding officer's role in greater detail: the President of the Senate opens the certificates "in the alphabetical order of the States," *id.*, and calls for objections, which must be in writing. After the two Houses resolve any objections, the votes are counted with the aid of four tellers. *Id.* At that point, "the President of the Senate . . . announce[s] the state of the vote, which announcement shall be deemed a sufficient declaration of the persons, if any, elected President and Vice

7

President of the United States." *Id.* Notably, Congress may not recess until "the count of electoral votes" is "completed" and the "result declared." *Id.* § 16. When the count is completed and the winner declared, a record of the votes is entered on the "Journals of the two Houses." *Id.* § 15.

b. As Congress was undertaking its constitutional and statutory obligation to certify the Electoral College vote on January 6, 2021, a mob of rioters forced past police officers and into the United States Capitol building, causing Members of Congress and the Vice President to flee and stopping the certification, which was underway. The rioters threatened and assaulted officers, vandalized and stole property, and flooded throughout the building. App.92. The mob's violence "left multiple people dead, injured more than 140 people, and inflicted millions of dollars in damage to the Capitol." *Trump v. Thompson*, 20 F.4th 10, 15 (D.C. Cir. 2021). The mob's violent breach also forced the certification proceeding to stop, triggered a lockdown, and prevented Congress from resuming for nearly six hours as police officers cleared the "hundreds of people breaching the U.S. Capitol building." App.190-206, 226.

Fischer, Lang, and Miller were part of that mob.  Before January 6, Miller made statements[1] on his Facebook account that he was coming to D.C. for "this trump shit," that a "civil war could start," and that he intended to bring with him "a grappling hook and rope and a level 3 vest" as well as a helmet, mouth guard, and a "bump cap."  App.75.  Fischer similarly averred that the "democratic congress" should be taken "to the gallows" and that "they should storm the capital and drag all the democrates into the street and have a mob trial."  App.434.

All three defendants stormed the Capitol on January 6.  Around 2:40 p.m., Lang entered the Lower West Terrace tunnel, App.20, where some of the most violent attacks on police officers occurred.  Until approximately 5 p.m., Lang pushed, kicked, and punched officers, at times using a bat or a stolen riot shield.  App.20-31.  Also around 2:40 p.m., Miller entered the Capitol building, where he joined a crowd of rioters pushing against a line of law enforcement officers in the Rotunda. App.77-78.  Fischer also entered the Capitol building on January 6, where, just outside the Capitol Rotunda at 3:25 p.m., he rushed a line of

---

[1] All quoted language in this paragraph is as it was written by the defendants.

police officers while yelling "Charge" and "Motherfuckers." App.428-29, 458. Fischer (himself a police officer) crashed into the police line, causing multiple people, including at least one officer, to fall to the ground. App.458-59.

After the events on January 6, 2021, all three defendants bragged about having stormed the Capitol. Miller said he had "charged the back gates" himself, App.458-59, while Fischer claimed to have "pushed police back about 25 feet," App.459. Also on January 6, following a string of tweets with Representative Alexandria Ocasio-Cortez, Miller wrote "Assassinate AOC." App.81. On January 6 and the following days, Miller made comments suggesting that the Capitol Police Officer who shot Ashli Babbit, a rioter who had tried to jump through a window in the Speaker's Lobby, was a "traitor cop" and a "target." App.82. In an interview on January 7, 2021, Lang described how he "had a gas mask on for the first two, three hours" as he was "fighting them face to face" as part of "a mission to have the Capitol building" and "stop this presidential election from being stolen." App.31-32. According to Lang: "It was war. This was no protest." App.31.

10

### B.   Procedural history

1. In September 2021, a grand jury returned a superseding indictment against Lang charging violations of 18 U.S.C. § 1512(c)(2), 18 U.S.C. § 111 (assaulting, resisting, or impeding officers), and other offenses. *See* App.51-57. In November 2021, a grand jury returned superseding indictments in separate cases against Fischer and Miller charging violations of 18 U.S.C. § 1512(c)(2) and other offenses. *See* App.84-89, 443-46. The count charging a violation of Section 1512(c)(2) was materially identical in each case: "On or about January 6, 2021, within the District of Columbia and elsewhere, [the defendant] attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18." App.55, 85-86, 444.

2. As relevant here, all three defendants moved to dismiss the Section 1512(c)(2) count. In a memorandum opinion granting Miller's motion to dismiss the Section 1512(c)(2) count, the district court rejected Miller's claim that the certification was not an "official proceeding" but

agreed that his conduct did not fit within Section 1512(c)(2). App.90-118. Before turning to the statute, the district court set out two interpretive principles that guided its analysis: (1) the "'traditional[]'" exercise of restraint when interpreting federal criminal laws, and (2) the rule of lenity. App.97-98.

The district court identified three potential readings of Section 1512: (1) the word "otherwise" establishes a "clean break" between Sections 1512(c)(1) and 1512(c)(2); (2) Section 1512(c)(1) provides examples of conduct that violate Section 1512(c)(2); or (3) Section 1512(c)(2) is a residual clause for Section 1512(c)(1). *See* App.99-109. Finding that interpretation (3), while not "abundantly clear," nonetheless "present[s] the fewest interpretive problems," App.109, the opinion turned to other statutory construction tools. Deploying those tools, the district court reasoned that Section 1512(c)(2)'s structure and legislative history suggest a narrower interpretation, App.109-11, 115-17, and its "historical development" indicate that it serves as a catchall for Section 1512(c)(1), App.112-14.

Having worked through that analysis, the district court concluded that there are two "plausible" interpretations: that Section 1512(c)(1)

"merely includes examples of conduct that violates" Section 1512(c)(2) or that Section 1512(c)(1) limits the scope of Section 1512(c)(2). App.117. Applying the rule of lenity in the face of what it considered "serious ambiguity," the district court adopted the latter interpretation, which in the district court's view "requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding." *Id.* As noted above, the indictment in Miller's case does not allege nor, in the district court's view, does it "impl[y]" that Miller took some action with respect to a document, record, or other object. App.118. The court rejected the government's alternative argument that Miller obstructed Congress's review of documents because, in the court's view, no such allegations existed in the indictment and because the government had not argued that Miller "*himself* took or attempted to take" any such actions. *Id.* "Absent such an allegation," the district court reasoned, the indictment fails to allege a violation of Section 1512(c)(2). *Id.*

The district court thereafter denied the government's motion to reconsider, observing that it had "carefully considered" rulings from other judges but nonetheless was "not persuaded" to revisit its holding

that the rule of lenity applied.   App.398-99.   The district court also concluded that, although the Section 1512(c)(2) count echoed the statutory language and provided the date and place of the offense, those allegations were "not enough" because Section 1512(c)(2) is "so broad and general that its terms, without more, fail to inform a reasonable person of the essential conduct at issue."   App.403 (emphasis omitted).

## SUMMARY OF ARGUMENT

I.    The prohibition in 18 U.S.C. § 1512(c) on corruptly obstructing an official proceeding directly applies to the conduct alleged in these cases. The district court erred by applying the rule of lenity to conclude otherwise.

Section 1512(c)(2)'s verbs plainly cover conduct that blocks or interferes with an official proceeding, and the contrasting language in Section 1512(c)'s subsections clarifies that while Section 1512(c)(1) covers destruction of documents, records, and other objects used in a proceeding, Section 1512(c)(2) covers other obstructive behavior that targets the proceeding directly.   That straightforward construction of Section 1512(c)(2) aligns with the interpretation of similar verbs in other obstruction provisions and the interpretation of every court of appeals

(and every other District of Columbia district court judge) to have considered Section 1512(c)(2).

The term "otherwise" in Section 1512(c)(2) further illustrates that it applies to "other," non-document-related obstruction, and, as such, ensures coverage of additional types of corrupt conduct that impedes an official proceeding. The district court's contrary conclusion disregards that straightforward construction and instead places undue emphasis on the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008), where the Court adopted a less common and context-dependent interpretation of "otherwise" in a statute structurally and grammatically unlike Section 1512(c). Nor do statutory canons or Section 1512(c)(2)'s legislative history support the district court's unintuitive interpretation.

Section 1512(c)(2)'s "corruptly" *mens rea* and the related nexus requirement limit the statute's reach to only those who engage in felonious conduct, and the plain language imposes no further limitations. If a limiting construction were appropriate, however, Section 1512(c)(2) at least covers conduct that thwarts the examination of documents at an official proceeding—as occurred here when the defendants impeded

lawmakers' consideration of Electoral College certificates during the certification proceeding.

II.    Even if the district court's narrowed interpretation of Section 1512(c)(2) were correct, dismissal was premature.  Because the Section 1512(c)(2) count here echoed the statutory language, described the congressional proceeding, and identified the place and single day of the alleged offense, the defendants have adequate notice to defend themselves.   Any limitation on Section 1512(c)(2)'s scope—a question of the defendants' *conduct*, not the sufficiency of the indictment's allegations—should be enforced by permitting conviction only on that basis, not by dismissing the Section 1512(c)(2) count, which encompassed both the government's plain-language interpretation of Section 1512(c)(2) and the district court's atextual narrowed interpretation.

## ARGUMENT

### I.    Obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), covers the defendants' alleged conduct on January 6, 2021.

This case should begin and end with the text of Section 1512(c)(2), which provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding" has committed a crime.   A person

violates that statute when, acting with the requisite *mens rea*, he engages in conduct that obstructs a specific congressional proceeding. *See* 18 U.S.C. §§ 1512(c)(2) & 1515(a)(1)(B).   Nothing in Section 1512(c)(2)'s text, structure, or history imposes a requirement that the defendant must take "some action with respect to a document, record, or other object." App.117.  The district court erred by applying the rule of lenity to impose such a limitation, as every other district court judge to have considered the issue in a Capitol siege case has concluded. *See, e.g.*, *United States v. McCaughey et al.*, No. 21-cr-40, ECF No. 388 at 2 (D.D.C. July 20, 2022) (McFadden, J.) (rejecting defendants' argument premised on *Miller* and observing that "*Miller* has also persuaded no other judge on this question"); *United States v. Robertson*, No. 21-cr-34, 2022 WL 2438546, at *3-*5 (D.D.C. July 5, 2022) (Cooper, J.); *United States v. Williams*, No. 21-cr-618, 2022 WL 2237301, at *17 n.13 (D.D.C. June 22, 2022) (Berman Jackson, J.); *United States v. Fitzsimons*, No. 21-cr-158, 2022 WL 1698063, at *6-*12 (D.D.C. May 26, 2022) (Contreras, J.); *United States v. Bingert*, No. 21-cr-91, 2022 WL 1659163, at *7-*11 (D.D.C. May 25, 2022) (Lamberth, J.); *United States v. McHugh*, No. 21-cr-453, 2022 WL 1302880, at *2-*13 (D.D.C. May 2, 2022) (Bates, J.);

17

*United States v. Puma*, No. 21-cr-454, 2022 WL 823079, at *12 n.4 (D.D.C. Mar. 19, 2022) (Friedman, J.); *United States v. Grider*, No. 21-cr-22, 2022 WL 392307, at *5-*6 (D.D.C. Feb. 9, 2022) (Kollar-Kotelly, J.); *United States v. Nordean*, No. 21-cr-175, 2021 WL 6134595, at *6-*8 (D.D.C. Dec. 28, 2021) (Kelly, J.); *United States v. Montgomery*, No. 21-cr-46, 2021 WL 6134591, at *10-*18 (D.D.C. Dec. 28, 2021) (Moss, J.); *United States v. Mostofsky*, No. 21-cr-138, 2021 WL 6049891, at *11 (D.D.C. Dec. 21, 2021) (Boasberg, J.); *United States v. Caldwell*, No. 21-cr-28, 2021 WL 6062718, at *11-*21 (D.D.C. Dec. 20, 2021) (Mehta, J.); *United States v. Sandlin*, No. 21-cr-88, 2021 WL 5865006, at *5-*9 (D.D.C. Dec. 10, 2021) (Friedrich, J.). And even if Section 1512(c)(2) is limited to obstructive acts involving documentary or tangible evidence, dismissal was improper because the statute covers the defendants' conduct as alleged in these cases.

> **A.    Section 1512(c)(2)'s text, structure, and history confirm that its prohibition covers obstructive conduct unrelated to documentary evidence.**

In Section 1512(c)(2), Congress prohibited conduct that intentionally and wrongfully obstructs official proceedings. The ordinary meaning of "obstruct[], influence[], or impede[]" encompasses a range of

conduct designed to frustrate an official proceeding. That conduct can include lying to a grand jury or in civil proceedings, exposing the identity of an undercover agent, or burning a building to conceal the bodies of murder victims. It also includes storming the Capitol to derail a congressional proceeding. A defendant who, acting with the necessary *mens rea*, obstructs Congress's certification of the Electoral College vote, commits a crime under Section 1512(c)(2).

> **1. Section 1512(c)'s text and structure confirm that Section 1512(c)(2) is not limited to document-related obstructive conduct.**

Section 1512(c)(2)'s plain text demonstrates that it prohibits any corrupt conduct that intentionally obstructs or impedes an official proceeding. When interpreting a statute, courts look first to the statutory language, "giving the words used their ordinary meaning." *Lawson v. FMR LLC*, 571 U.S. 429, 440 (2014) (internal quotation marks omitted). If the statutory language is plain and unambiguous, this Court's "inquiry begins with the statutory text, and ends there as well." *National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617, 631 (2018) (internal quotation marks omitted). Here, the meaning of "obstruct[], influence[], or impede[]" is controlled by the ordinary meaning of those words.

19

The verbs Congress selected in Section 1512(c)(2) are "noncontroversial." *Montgomery*, 2021 WL 6134591, at *10. The words "obstruct" and "impede" naturally "refer to anything that 'blocks,' 'makes difficult,' or 'hinders.'" *Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018) (brackets omitted) (citing dictionaries). Similarly, "influence" includes "affect[ing] the condition of" or "hav[ing] an effect on." *Influence*, Oxford English Dictionary, *available at* http://www.oed.com. These verbs plainly apply to obstructive conduct that otherwise might not fall within the definition of document or evidence destruction. *See United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013). When read with Section 1512(c)(2)'s subject ("whoever") and object ("any official proceeding"), those verbs prohibit a defendant "from coming in the way of, blocking, or holding up the business conducted by an official body, such as a court or the Congress, when that body has formally convened for the purpose of conducting that business." *Montgomery*, 2021 WL 6134591, at *10.

Comparing the language in Section 1512(c)(1) to that in Section 1512(c)(2) confirms that the latter, unlike the former, is not a document-focused provision. Section 1512(c) consists of two subsections requiring the defendant to act "corruptly." Both contain a string of verbs followed

by one or more direct objects. Section 1512(c)(1) applies to whoever corruptly "alters, destroys, mutilates, or conceals a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding." The objects—"a record, document, or other object"—are static. In contrast, Section 1512(c)(2) applies to whoever corruptly "obstructs, influences, or impedes any official proceeding." The object—"proceeding"—is dynamic, and the verbs that precede it are all intended to change the movement or course of that "proceeding." They are verbs that do not apply to a fixed "record" or "document" or an inanimate "object." The two sections are related through their connection to an official proceeding: Section 1512(c)(1)'s verbs target forms of evidence tampering (*e.g.*, altering, destroying mutilating) directed at the documents, records, and objects that are used in official proceedings, while Section 1512(c)(2)'s verbs take the proceeding itself as the object—thus prohibiting whatever conduct blocks or interferes with that proceeding without regard to whether that conduct involved documentary or tangible evidence.

Importing into Section 1512(c)(2) a nexus-to-documents requirement would not only require inserting an extratextual gloss, *see*

*Dean v. United States*, 556 U.S. 568, 572 (2009) (courts "ordinarily resist reading words or elements into a statute that do not appear on its face") (internal quotation marks omitted), it would also render the verbs in Section 1512(c)(2) inapt.  The *actus reus* that the verbs in Section 1512(c)(2) encompass is obstructing, influencing, and impeding.  But "[h]ow [could] anyone [] alter, destroy, mutilate or conceal an 'official proceeding' or how [could] anyone [] 'obstruct[], influence[], or impede[]' 'a record, document, or other object'?"  *Montgomery*, 2021 WL 6134591, at *14; *accord Fitzsimons*, 2022 WL 1698063, at *12; *cf. Yates v. United States*, 574 U.S. 528, 551 (2015) (Alito, J., concurring) (rejecting interpretation of "tangible object" in Section 1519 that would include a fish in part because of a mismatch between that potential object and the statutory verbs: "How does one make a false entry in a fish?"); *id.* at 544 (plurality opinion) ("It would be unnatural, for example, to describe a killer's act of wiping his fingerprints from a gun as 'falsifying' the murder weapon.").  Such a mismatch is all the more unlikely given how readily Congress in Section 1512(c)(2) could have drafted language that supplies a nexus to documents.  *See Montgomery*, 2021 WL 6134591, at *12 (Congress could have enacted a prohibition that covers anyone who

"'engages in conduct that otherwise impairs the integrity or availability of evidence or testimony for use in an official proceeding'").

The resemblance between the operative verbs in Section 1512(c)(2) and those Congress enacted in two other obstruction provisions, 18 U.S.C. §§ 1503(a) and 1505, demonstrates that Section 1512(c)(2) was designed to reach more than document-related obstructive conduct. Congress drafted the "omnibus clause" in Section 1503(a), which prohibits "corruptly . . . influenc[ing], obstruct[ing], or imped[ing] . . . the due administration of justice," to serve as a "catchall provision," *United States v. Aguilar*, 515 U.S. 593, 599 (1995), that criminalizes obstructive conduct that falls outside the narrower prohibitions within Section 1503(a) and neighboring provisions. *See, e.g.*, *United States v. Sussman*, 709 F.3d 155, 168-70 (3d Cir. 2013) (removing gold coins from safe-deposit box); *United States v. Frank*, 354 F.3d 910, 916-19 (8th Cir. 2004) (removing car to avoid seizure); *United States v. Lefkowitz*, 125 F.3d 608, 619-20 (8th Cir. 1997) (instructing employee to remove documents from a house); *United States v. Lester*, 749 F.2d 1288, 1295 (9th Cir. 1984) (hiding a witness); *United States v. Brown*, 688 F.2d 596, 597-98 (9th Cir. 1982) (warning suspect about impending search warrant to prevent

discovery of heroin). Section 1505, which prohibits "corruptly . . . influenc[ing], obstruct[ing], or imped[ing] . . . the due and proper administration of the law under which any pending proceeding is being had," has been construed to have a similar scope. *See, e.g.*, *United States v. Vastardis*, 19 F.4th 573, 587 (3d Cir. 2021) (manipulating an oil content meter to produce an inaccurate reading during a Coast Guard inspection and making a related false statement). Like Section 1512(c)(2), Sections 1503(a) and 1505 do not include "any limitation on the nature of the obstructive act other than that it must be committed 'corruptly,'" which "gives rise to 'a fair inference' that 'Congress intended [Section 1512(c)(2)] to have a [broad scope].'" *McHugh*, 2022 WL 1302880, at *10 (quoting App.114).

Consistent with the interpretation that obstructive behavior may violate Section 1512(c)(2) even where the defendant does not "take[] some action with respect to a document," App.117, courts of appeals have upheld convictions under Section 1512(c)(2) for defendants who attempted to secure a false alibi witness while in jail for having stolen a vehicle, *United States v. Petruk*, 781 F.3d 438, 440, 447 (8th Cir. 2015); disclosed the identity of an undercover federal agent to thwart a grand

24

jury investigation, *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009); lied in written responses to civil interrogatory questions about past misconduct while a police officer, *Burge*, 711 F.3d at 808-09; testified falsely before a grand jury, *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009); solicited information about a grand jury investigation from corrupt "local police officers," *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014); and burned an apartment to conceal the bodies of two murder victims, *United States v. Cervantes*, No. 16-10508, 2021 WL 2666684, at *6 (9th Cir. June 29, 2021) (unpublished); *see also United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017) (police officer tipped off suspects before issuance or execution of search warrants), *vacated on other grounds*, 139 S. Ct. 2772 (2019); *United States v. Ahrensfield*, 698 F.3d 1310, 1324-26 (10th Cir. 2012) (law enforcement officer disclosed existence of undercover investigation to target).

Interpreted correctly, Section 1512(c)(2) applies to the defendants' conduct, which involved penetrating into the Capitol building to prevent a Joint Session of Congress from counting the certificates bearing the votes of the electors and thereby certifying the results of the 2020 Presidential election. By trespassing into the restricted Capitol area and

interfering with and assaulting law enforcement officers, the defendants hindered and delayed an "official proceeding" before Congress.  *See* 18 U.S.C. § 1515(a)(1)(B).  Because construing Section 1512(c)(2) to reach such conduct would neither "frustrate Congress's clear intention" nor "yield patent absurdity," this Court's "obligation is to apply the statute as Congress wrote it."  *Hubbard v. United States*, 514 U.S. 695, 703 (1995) (internal quotation marks omitted).

> ### 2. The term "otherwise" reinforces that Section 1512(c)(2) covers obstructive conduct "other" than the document destruction covered in Section 1512(c)(1).

The district court's textual analysis overlooked Section 1512(c)(2)'s verbs and focused almost entirely on the term "otherwise."  But that term, properly interpreted, does not support the district court's narrowed interpretation of Section 1512(c)(2).

The term "otherwise" means "in another way" or "in any other way." *Otherwise*, Oxford English Dictionary, *available at* http://www.oed.com. Consistent with its ordinary meaning, the term "otherwise" conveys that Section 1512(c)(2) encompasses misconduct that threatens an official proceeding "beyond [the] simple document destruction" that Section 1512(c)(1) proscribes.  *Burge*, 711 F.3d at 809; *Petruk*, 781 F.3d at 446-

47 (noting that "otherwise" in Section 1512(c)(2), understood to mean "in another manner" or "differently," implies that the obstruction prohibition applies "without regard to whether the action relates to documents or records") (internal quotation marks omitted); *United States v. Ring*, 628 F.Supp.2d 195, 224 n.17 (D.D.C. 2009) (noting that Section 1512(c)(2) is "plainly separate and independent of" Section 1512(c)(1), and declining to read "otherwise" in Section 1512(c)(2) "as limited by § 1512(c)(1)'s separate and independent prohibition on evidence-tampering"); *see also Gooch v. United States*, 297 U.S. 124, 126-28 (1936) (characterizing "otherwise" as a "broad term" and holding that a statutory prohibition on kidnapping "'for ransom or reward or otherwise'" is not limited by the words "ransom" and "reward" to kidnappings for pecuniary benefit); *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004) (construing "otherwise" in 28 U.S.C. § 2466(a)(1)(C) to reach beyond the "specific examples" listed in prior subsections, thereby covering the "myriad means that human ingenuity might devise to permit a person to avoid the jurisdiction of a court"). That reading follows inescapably from the text of Section 1512(c)'s two subsections read together: Section 1512(c)(1) "describes how a defendant can violate the statute by 'alter[ing],

27

destroy[ing], mutilat[ing], or conceal[ing]' documents for use in an official proceeding," *Puma*, 2022 WL 823079, at *12, while "otherwise" in Section 1512(c)(2) "signals a shift in emphasis . . . from actions directed at evidence to actions directed at the official proceeding itself," *Montgomery*, 2021 WL 6134591, at *12 (internal quotation marks omitted).

In this way, Section 1512(c)(2) criminalizes the same *result* prohibited by Section 1512(c)(1)—obstruction of an official proceeding—when that result is accomplished by a different means, *i.e.*, by conduct *other* than destruction of a document, record, or other object. *Cf. United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir. 1978) (explaining that 18 U.S.C. § 1503(a), which criminalizes the result of obstructing the due administration of justice, provides specific means of accomplishing that result and then a separate catchall clause designed to capture other means). Section 1512(c)(2), in other words, "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense involving documents or records under Section 1512(c)(1). *Petruk*, 781 F.3d at 447 (quoting *Volpendesto*, 746 F.3d at 286).

The district court was mistaken in concluding that the interpretation above either "ignores" that "otherwise" is defined with reference to "something else," namely Section 1512(c)(1), or fails to "give meaning" to the term "otherwise." App.101.[2] Far from suggesting that Section 1512(c)(2) is "wholly untethered to" Section 1512(c)(1), *id.*, "otherwise" as used in Section 1512(c)(2) indicates that Section 1512(c)(2) targets obstructive conduct in a manner "other" than the evidence tampering or document destruction that is covered in Section 1512(c)(1). That understanding of "otherwise" is fully consistent with each definition the district court surveyed, *see* App.100 (noting that "otherwise" in Section 1512(c)(2) may plausibly be read as "in a different way or manner; differently"; "in different circumstances: under other conditions"; or "in other respects") (internal quotation marks omitted), and does not render the term "pure surplusage," App.101.

The district court further reasoned that interpreting "otherwise" for

---

[2] The district court also was mistaken in characterizing this interpretation as a "clean break between subsections." App.100-01. Far from a "clean break," the term "otherwise" "connects the two clauses by clarifying that the obstructive acts in subsection (c)(2) must be different in some way from the evidence-related obstructive acts listed in (c)(1)." *Fitzsimons*, 2022 WL 1698063, at *7 n.7

purposes of Section 1512(c)(2) in the manner described above is "inconsistent" with *Begay v. United States*, 553 U.S. 137 (2008), where, in the district court's view, analysis of what "'otherwise' meant" was "[c]rucial" to the Supreme Court's decision. App.101. The district court's reasoning is flawed.

First, in considering whether driving under the influence was a "violent felony" for purposes of the Armed Career Criminal Act (ACCA)'s residual clause, which defines a "violent felony" as a felony that "is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury*," 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added), the Supreme Court in *Begay* addressed a statutory provision that has an entirely different structure than Section 1512(c)(2). *See Sandlin*, 2021 WL 5865006, at *6 (distinguishing *Begay* on the ground that, unlike the ACCA residual clause, the "otherwise" in Section 1512(c)(2) is "set off by both a semicolon and a line break"). Unlike in the ACCA residual clause, the "otherwise" phrase in Section 1512(c)(2) "stands alone, unaccompanied by any

30

limiting examples."[3] *Ring*, 628 F.Supp.2d at 224 n.17. In other words, the "key feature" in Section 924(e)(2)(B)(ii) at issue in *Begay*, "namely, the four example crimes," 553 U.S. at 147, is "absent" in Section 1512(c)(2). *Caldwell*, 2021 WL 6062718, at \*14. Although the district court recognized the structural difference between the ACCA residual clause and Section 1512(c)(2), *see* App.107-08, it offered no reason to import *Begay*'s interpretation of "otherwise" to Section 1512(c)(2)'s differently structured provision.

In fact, Section 1512(c)(2) is a poor fit for application of the *ejusdem generis* canon that *Begay* applied to the ACCA residual clause and that the district court functionally applied to Section 1512(c). "Where a general term follows a list of specific terms, the rule of *ejusdem generis* limits the general term as referring only to items of the same category."

---

[3] The district court suggested (App.104-05) that "[t]he government also presents an alternative reading" that Section 1512(c)(1) "provides examples of conduct that violates" Section 1512(c)(2). App.104. That is incorrect. Neither the government nor the defendants here nor (to the government's knowledge) any court has proposed or adopted that construction of Section 1512(c)(2). Considering an interpretation that no party advocates and no court has adopted injects the kind of "front-end ambiguity" that "lead[s] to significant inconsistency, unpredictability, and unfairness in application." *Wooden v. United States*, 142 S. Ct. 1063, 1076 (2022) (Kavanaugh, J., concurring).

*United States v. Espy*, 145 F.3d 1369, 1370-71 (D.C. Cir. 1998). In *Yates*, for example, the plurality and concurring opinions applied the *ejusdem generis* canon to interpret the word "tangible object" in 18 U.S.C. § 1519, which makes it a crime to "knowingly alter[], destroy[], mutilate[], conceal[], cover[] up, falsif[y], or make[] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence" an investigation. *See* 574 U.S. at 545-56 (plurality opinion); *id.* at 549-50 (Alito, J., concurring). But Section 1512(c)'s structure differs significantly: it includes one numbered provision that prohibits evidence-tampering, followed by a semi-colon, the disjunctive "or," and then a separately numbered provision containing the separate catchall obstruction prohibition. "The absence of a list of specific items undercuts the inference embodied in *ejusdem generis* that Congress remained focused on the common attribute when it used the catchall phrase." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008). Furthermore, in the same way that the *ejusdem generis* canon does not apply to the omnibus clause in Section 1503 that is "one of . . . several distinct and independent prohibitions" rather than "a general or collective term following a list of specific items to which a particular statutory command is applicable,"

*Aguilar*, 515 U.S. at 615 (Scalia, J., concurring in part and dissenting in part), it has no application to Section 1512(c)(2), which embodies the same structure. *Cf. Loughrin v. United States*, 573 U.S. 351, 359 (2014) (distinguishing the mail fraud statute (18 U.S.C. § 1341), which "contains two phrases strung together in a single, unbroken sentence," from the bank fraud statute (18 U.S.C. § 1344), which comprises "two clauses" with "separate numbers, line breaks before, between, and after them, and equivalent indentation—thus placing the clauses visually on an equal footing and indicating that they have separate meanings"); *see also McHugh*, 2022 WL 1302880, at *5 (explaining that the *ejusdem generis* canon on which *Miller* relied is "irrelevant" because rather than the "'A, B, C, or otherwise D'" structure found in the ACCA residual clause, Section 1512(c) "follows the form '(1) A, B, C, or D; or (2) otherwise E, F, or G'").

Second, describing the Supreme Court's interpretation of "what 'otherwise' meant" as "[c]rucial" (App.101) to that Court's decision in *Begay* is an inaccurate description of *Begay*'s analysis. The majority in *Begay* noted first that the "listed examples" in Section 924(e)(2)(B)(ii)—burglary, arson, extortion, or crimes involving explosives—indicated that

33

the ACCA residual clause covered only similar crimes.  *Begay*, 553 U.S. at 142.  Those examples, the majority reasoned, demonstrated that Section 924(e)(2)(B)(ii) was not designed "to be all encompassing," but instead to cover only "crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves."  *Id.* at 142-43.  The majority next drew support for its conclusion from Section 924(e)(2)(B)(ii)'s history, which showed that Congress both opted for the specific examples in lieu of a "broad proposal" that would have covered offenses involving the substantial use of physical force and described Section 924(e)(2)(B)(ii) as intending to encompass crimes "similar" to the examples.  *Id.* at 143-44.  In the final paragraph of that section of the opinion, the majority addressed "otherwise," noting that the majority "[could ]not agree" with the government's argument that "otherwise" is "*sufficient* to demonstrate that the examples do not limit the scope of the clause" because "the word 'otherwise' *can* (we do not say *must* . . .) refer to a crime that is similar to the listed examples in some respects but different in others."  *Id.* at 144.

A tertiary rationale responding to a party's argument where the majority refrains from adopting a definitive view of "otherwise" cannot

be described as "[c]rucial." The majority's "remarkably agnostic" discussion of "otherwise" in *Begay*, which explicitly noted that the word may carry a different meaning where (as here) the statutory text and context indicates otherwise, *Montgomery*, 2021 WL 6134591, at \*11, suggests, if anything, that "*the government's* interpretation of 'otherwise' [in Section 1512(c)(2)] is the word's more natural reading," *McHugh*, 2022 WL 1302880, at \*5 n.9; *see also Caldwell*, 2021 WL 6062718, at \*14 (declining to depart from the "natural reading" of "otherwise" to mean "'in a different way or manner'" based on the discussion in *Begay*). In short, the majority in *Begay* "placed little or no weight on the word 'otherwise' in resolving the case." *Montgomery*, 2021 WL 6134591, at \*11.

Third, whatever the significance of the majority's interpretation of "otherwise" in *Begay*, *Begay*'s holding and the subsequent interpretation of the ACCA residual clause demonstrate the central flaw with imposing an extratextual requirement within Section 1512(c)(2). The Supreme Court held in *Begay* that Section 924(e)(2)(B)(ii) encompasses only crimes that, similar to the listed examples, involve "purposeful, 'violent,' and 'aggressive' conduct." 553 U.S. at 144-45. But "*Begay* did not succeed in

35

bringing clarity to the meaning of the residual clause." *Johnson v. United States*, 576 U.S. 591, 600 (2015). Just as the *Begay* majority "engraft[ed]" the "purposeful, violent, and aggressive conduct" requirement onto the ACCA's residual clause, 553 U.S. at 150 (Scalia, J., concurring in judgment) (internal quotation marks omitted), so too the district court engrafted onto Section 1512(c)(2) the requirement that a defendant "have taken some action with respect to a document, record, or other object" to obstruct an official proceeding, App.117. In the nearly 20 years since Congress enacted Section 1512(c)(2), no reported cases have adopted the district court's interpretation, and for good reason. That interpretation would give rise to unnecessarily complex questions about what sort of conduct qualifies as "tak[ing] some action with respect to a document" in order to obstruct an official proceeding. *Cf. United States v. Singleton*, No. 06-cr-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006) (unpublished) (concluding that Section 1512(c)(2) "require[s] some nexus to tangible evidence, though not necessarily tangible evidence already in existence"); *see also United States v. Hutcherson*, No. 05-cr-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) (unpublished) (concluding that a violation of Section 1512(c)(2) requires proof that "an individual corruptly

36

obstructs an official proceeding[] through his conduct in relation to a tangible object"). [4]   In brief, the district court's interpretation is likely to give rise to the very ambiguity it purports to avoid.

### 3. Tools of statutory interpretation do not support the district court's narrowed interpretation.

Other tools of statutory construction reinforce the conclusion that Section 1512(c)(2) reaches conduct that obstructs or impedes an official proceeding in a manner other than through document destruction or evidence tampering.  In reaching a contrary conclusion, the district court erred in several respects.

First, the district court suggested that reading Section 1512(c)(2) consistently with its plain language and structure as described above

---

[4] The district court's interpretation of Section 1512(c)(2) resembles the reading given in *Singleton* and *Hutcherson*, both of which are unpublished and neither of which the district court cited.  As noted in the main text, no other court, at least in a reported opinion, appears to have adopted the nexus-to-tangible-evidence-or-a-tangible-object standard articulated in *Singleton* and *Hutcherson*. *See United States v. De Bruhl-Daniels*, 491 F.Supp.3d 237, 250-51 (S.D. Tex. 2020) (identifying *Singleton* and *Hutcherson* as outliers from the "most popular—and increasingly prevalent—interpretation of § 1512(c)(2) [as] an unlimited prohibition on obstructive behavior that extends beyond merely tampering with tangible items"); *Ring*, 628 F.Supp.2d at 225 n.18 (disagreeing with *Singleton* and *Hutcherson* but finding that the alleged conduct at issue in that case involved "some nexus to documents").  No court of appeals has cited either case.

would "introduce something of an internal inconsistency" because Section 1512(c)(2) would have greater breadth than neighboring provisions in Section 1512. App.110. But the district court's description of Section 1512(c)(2) as an "elephant[] in [a] mousehole[]" because it is found "in a subsection of a subsection nestled in the middle of the statute," *id.*, or placed "unintuitive[ly]" in the "middle-back" of Section 1512, App.111 n.10, is inaccurate. Section 1512 is comprised of two parts: four subsections that define criminal offenses (Sections 1512(a)-(d)), followed by six subsections that provide generally applicable definitions and clarifications (Sections 1512(e)-(j)).[5]    Within the first part, three subsections (Sections 1512(a)-(c)) define criminal offenses with statutory maxima of at least 20 years, *see* §§ 1512(a)(3), (b)(3), (c), while Section 1512(d) carries a three-year statutory maximum, § 1512(d). Within that structure, Congress sensibly placed Section 1512(c)(2) at the very end of the most serious—as measured by statutory maximum sentences— obstruction offenses, precisely where a "catchall" for obstructive conduct

---

[5] Section 1512 also includes one subsection, placed at the end, that adds a conspiracy offense applicable to any of the substantive offenses set out in Sections 1512(a)-(d). 18 U.S.C. § 1512(k).

not covered by the more specific preceding provisions would be expected. In any event, the "mousehole" canon provides that Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions," *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001), but it "has no relevance" where, as here, the statute in question was written in "broad terms," *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1753 (2020).[6]

Second, the district court worried that a reading of Section 1512(c)(2) that encompasses obstructive conduct unrelated to documents would give rise to "substantial superfluity problems." App.110. But any overlap is "not uncommon in criminal statutes," *Loughrin*, 573 U.S. at 358 n.4, and Section 1512(c)(2)'s broader language effectuates its design as a backstop in the same way that a "generally phrased residual clause . . . serves as a catchall for matters not specifically contemplated." *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009). Moreover, the "mere fact that two federal criminal statutes criminalize similar conduct says

---

[6] Nor is Section 1512 fairly described as a "mousehole[]." Unlike the "specialized provisions expressly aimed at corporate fraud and financial audits" found toward the end of Chapter 73, Section 1512 consists instead of "broad proscriptions." *Yates*, 574 U.S. at 541 (plurality opinion).

little about the scope of either." *Pasquantino v. United States*, 544 U.S. 349, 358 n.4 (2005).

Any overlap between Section 1512(c)(2) and other provisions in Section 1512 has a "simple" explanation that does not warrant the district court's narrowing construction. *McHugh*, 2022 WL 1302880, at *8. When Congress enacted the "direct obstruction" provision in Section 1512(c)(2), that provision necessarily included the "indirect obstruction prohibited" in the rest of Section 1512. *Id.* Congress in Section 1512(c)(2) therefore did not "*duplicate* pre-existing provisions . . . but instead *expanded* the statute to include additional forms of obstructive conduct, necessarily creating overlap with the section's other, narrower prohibitions." *Id.* Congress was not required to repeal those pre-existing prohibitions and rewrite Section 1512 "to create a single, blanket obstruction offense" just to avoid overlap. *Id.* at *9. "Redundancies across statutes are not unusual events in drafting," *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992), and the "rule[] of thumb" that statutes should be interpreted to avoid superfluity necessarily yields to the "cardinal canon" that Congress "says in a statute what it means and means in a statute what it says there," *id.* at 253-54. In other words,

Section 1512(c)(2) "creates only explicable and indeed inevitable overlap rather than outright redundancy," such that the "purported superfluity" in Section 1512 "simply does not justify displacing the provision's ordinary meaning." *McHugh*, 2022 WL 1302880, at *10. That is particularly so here because even a "broad interpretation of § 1512(c)(2) does not entirely subsume numerous provisions within the chapter," and any overlap with other provisions in Section 1512 is "hardly remarkable." *Sandlin*, 2021 WL 5865006, at *8; *accord Nordean*, 2021 WL 6134595, at *8.

Notably, the district court's interpretation injects a more troubling type of superfluity. The district court's interpretation, by construing Section 1512(c)(2) to require "some action with respect to a document," App.117, risks rendering Section 1512(c)(2) itself superfluous in light of the "broad ban on evidence-spoliation" in Section 1512(c)(1). *Yates*, 574 U.S. at 541 n.4 (plurality opinion) (internal quotation marks omitted); *cf. United States v. Poindexter*, 951 F.2d 369, 385 (D.C. Cir. 1991) (explaining that limiting the catchall provision in Section 1503(a)'s omnibus clause to obstructive acts "directed against individuals" would render the omnibus clause superfluous because "earlier, specific[]

41

prohibitions" in Section 1503(a) "pretty well exhaust such possibilities") (internal quotation marks omitted). The canon against surplusage is "strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013). It is even stronger here, when it would render superfluous "other provisions in the *same enactment*"—namely, the Sarbanes-Oxley Act. *Freytag v. Comm'r*, 501 U.S. 868, 877 (1991) (emphasis added; internal quotation marks omitted). At a minimum, the canon does not militate in favor of the district court's reading. *See United States v. Ali*, 718 F.3d 929, 938 (D.C. Cir. 2013) (canon against surplusage "'merely favors that interpretation which *avoids* surplusage,' not the construction substituting one instance of superfluous language for another").

Finally, an interpretation of Section 1512(c)(2) that imposes criminal liability only when an individual takes direct action "with respect to a document, record, or other object" to obstruct a qualifying proceeding leads to absurd results. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994) (rejecting interpretation of a criminal statute that would "produce results that were not merely odd, but

positively absurd"). That interpretation would appear, for example, not to encompass an individual who seeks to "obstruct[], influence[], or impede[]" a congressional proceeding by explicitly stating that he intends to stop the legislators from performing their constitutional and statutory duties to certify the Electoral College vote results by "drag[ging] lawmakers out of the Capitol by their heels with their heads hitting every step," App.163, and then leading a "mob and encourag[ing] it to charge toward federal officers, pushing them aside to break into the Capitol," App.162-63, unless he also picked up a "document or record" related to the proceeding during that violent attack. The statutory text does not require such a counterintuitive result.

In short, if Congress in Section 1512(c)(2) endeavored to create the narrow document-focused provision that the district court envisioned, it "did a particularly poor job of drafting" because Congress would have "effectuated [its] intent in a way that is singularly susceptible to misinterpretation, as evidenced by the overwhelming majority of judges who have construed § 1512(c)(2) broadly." *McHugh*, 2022 WL 1302880, at *11; *see supra* 17-18; 24-25. In accordance with those judges, this Court should reject the district court's atextual, narrowed interpretation.

43

### 4. Legislative history does not support the district court's narrowed interpretation.

Because "the statutory language provides a clear answer," the construction of Section 1512(c)(2) "ends there," and resort to legislative history is unnecessary. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). Regardless, the legislative history of Section 1512(c)(2)—particularly when considered alongside the history of Section 1512 more generally—does not support the district court's interpretation of Section 1512(c)(2) for two reasons.

First, Section 1512(c) aimed at closing a "loophole" in Section 1512: the existing prohibitions did not adequately cover a defendant's *personal* obstructive conduct *not* aimed at another person. *See* 148 Cong. Rec. S6550 (statement of Sen. Hatch); *supra* 4-5. To close that loophole, Section 1512(c)(1) criminalizes a defendant's firsthand destruction of evidence (without having to prove that the defendant induced another person to destroy evidence) in relation to an official proceeding, and Section 1512(c)(2) criminalizes a defendant's firsthand obstructive conduct that *otherwise* impedes or influences an official proceeding (though not necessarily through another person). *See Burge*, 711 F.3d at 809-10. The district court's limiting construction undermines Congress's

44

efforts at loophole closing.

Second, no substantive inference is reasonably drawn from the fact that the title of Section 1512 does not precisely match the "broad proscription" it in fact contains, given that the Sarbanes-Oxley Act unequivocally and broadly entitled the new provisions now codified in Section 1512(c), "Tampering with a record *or* otherwise impeding an official proceeding." Pub. L. No. 107-204, § 1102, 116 Stat. 807 (emphasis added; capitalization altered). Section 1512's title is more limited simply because Congress did not amend the pre-existing title when it added the two prohibitions in Section 1512(c) in 2002. *Cf. Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947) (describing "the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text").

The district court's conclusion, App.112-17, that Section 1512(c)'s historical development and legislative history counsel in favor of its narrowed interpretation of Section 1512(c)(2) lacks merit. For example, the district court suggested that Congress would have had no reason to add Section 1512(a)(2)(B) three months after enacting Section 1512(c)(2) if the latter provision were construed broadly. App.113-14. Section

45

1512(a)(2)(B) prohibits the use or threatened use of physical force against "any person" with the intent to "cause or induce any person" to take one of four actions, including "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] an object with intent to impair the integrity or availability of the object for use in an official proceeding."   18 U.S.C. § 1512(a)(2)(B)(ii).   But as noted above, unlike Section 1512(a)(2)(B), Section 1512(c) aimed generally to impose "direct" liability for obstructive conduct that was not directed at intimidating or influencing another person.   Understood in that light, Section 1512(a)(2)(B) operates harmoniously with both subsections in Section 1512(c): Section 1512(a)(2)(B)(ii) reaches a defendant's use of force or threatened use of force directed at *another person* in order to cause that person to destroy documents in connection with an official proceeding; Section 1512(c)(1) reaches a defendant's direct destruction of documents in connection with an official proceeding; and Section 1512(c)(2) reaches a defendant's non-document-related conduct that obstructs or impedes an official proceeding.   Moreover, to the extent Congress's enactment of Section 1512(a)(2)(B) just three months after the enactment of Section 1512(c) might tend to undermine the plain-language interpretation of Section

1512(c)(2), the fact that Section 1512(a)(2) was "written and first approved" a year earlier than it was enacted—and therefore nine months before Section 1512(c)(2) was enacted—"somewhat undermines the inference" that the district court drew about Section 1512(c)(2)'s scope. *McHugh*, 2022 WL 1302880, at *9 n.17.

And while the legislators who enacted Section 1512(c) in the Sarbanes-Oxley Act undoubtedly had document shredding foremost in mind, "it is unlikely that Congress was concerned with only the type of document destruction at issue in the *Arthur Andersen* case." *Montgomery*, 2021 WL 6134591, at *16. In other words, "there is no reason to believe that Congress intended to fix that problem only with respect to 'the availability or integrity of evidence.'" *Id.* In addition, if the district court's narrow interpretation were correct, then certain floor statements, such as Senator Hatch's description of Section 1512(c)'s purpose to strengthen an obstruction offense "often used to prosecute document shredding *and other forms of obstruction of justice*," 148 Cong. Rec. S6550 (emphasis added), "would be quite strange." *McHugh*, 2022 WL 1302880, at *12.

**B.    Section 1512(c)(2)'s *mens rea* and nexus requirements limit the statute's reach.**

Although Section 1512(c)(2) applies to any conduct that "obstructs, influences, or impedes," a felony obstruction offense does not exist unless the defendant acts "corruptly" and targets his conduct at a specific "official proceeding."    These two requirements—which require the government to prove a stringent *mens rea* and a nexus to an official proceeding—limit Section 1512(c)(2)'s reach. *Cf. United States v. Jeter*, 775 F.2d 670, 675 (6th Cir. 1985) (Section 1503(a) "contains a clear *mens rea* requirement that limits its scope to those who 'corruptly' or *intentionally* seek to obstruct").    These requirements thus ensure the appropriate "restraint" on Section 1512(c)(2)'s scope that the district court sought to impose through its atextual limiting construction. *See Marinello*, 138 S. Ct. at 1109 (internal quotation marks omitted) (finding that the required nexus to a particular administrative proceeding limited 26 U.S.C. § 7212(a)'s reach).

1. To violate Section 1512(c)(2), the defendant must act "corruptly." Because "'corruptly'" is not defined in the statute, it carries "its usual meaning." *United States v. North*, 910 F.2d 843, 881 (D.C. Cir. 1990) (per curiam), *withdrawn and superseded in part by United States v.*

48

*North*, 920 F.2d 940 (D.C. Cir. 1990) (per curiam).  In *Poindexter*, this Court suggested, while construing Section 1505, that "'corruptly'" was "vague . . . in the absence of some narrowing gloss."  951 F.2d at 378. After surveying the obstruction statute's legislative history (including the "[o]rigins" of Sections 1503 and 1505) and case law interpreting Section 1505, the Court reversed the defendant's conviction because Section 1505 failed to provide "constitutionally required notice" that the defendant's conduct—making false and misleading statements to Congress—fell within the statute's scope.  *Id.* at 380, 386.  The Court disclaimed any conclusion that "'corruptly'" in Section 1505 was "unconstitutionally vague as applied to all conduct," *id.* at 385, and also declined to adopt as a standard that "'corruptly' means that in acting, the defendant aimed to obtain an 'improper advantage for [himself] or someone else inconsistent with official duty and rights of others,'" *id.* at 385-86 (quoting *North*, 910 F.2d at 881-82).

For purposes of Section 1512(c)(2), "corruptly" requires proof of "consciousness of wrongdoing."  *See United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing") (internal quotation marks

49

omitted); *see also United States v. Lonich*, 23 F.4th 881, 906 (9th Cir. 2022) (applying the "'consciousness of wrongdoing'" standard).  That the term "corruptly" requires the government to prove that a defendant acted not only with intent to obstruct but also with "consciousness of wrongdoing" ensures that only those who understand the character and import of their actions are punished. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005).  That limitation is particularly important where, as here, the defendants are alleged to have obstructed a congressional proceeding.  *See North*, 910 F.2d at 882 (noting that an "executive branch official" or a "political activist" may seek to persuade a representative to "stop[] spending her time pursuing a certain investigation" but instead pursue "some other legislative endeavor"; that conduct could be viewed as "endeavoring to impede or obstruct the investigation, but it is not necessarily doing so corruptly").

To prove that an attempted or actual obstruction of a congressional proceeding amounts to felony obstruction in violation of Section 1512(c)(2), the government must bear the "heavy burden" to prove that the defendant intended to obstruct the proceeding; that "the natural and probable effect of the defendant's actions were to obstruct the official

proceeding," *Montgomery*, 2021 WL 6134591, at \*22; and that the defendant acted either "with a corrupt purpose" or through "independently corrupt means," or both, *see Sandlin*, 2021 WL 5865006, at \*11 (quoting *North*, 910 F.2d at 942-43 (Silberman, J., concurring in part and dissenting in part)).[7]

2.    To establish a violation of Section 1512(c)(2), the government must also satisfy the "nexus" requirement, namely, that the defendant "contemplated a particular, foreseeable proceeding, and that the contemplated proceeding constituted an official proceeding." *United States v. Young*, 916 F.3d 368, 386 (4th Cir. 2019) (internal quotation marks omitted). "'[T]he nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the *mens rea* requirement of "corruptly" obstructing or endeavoring to obstruct[.]'" *Id.* at 385 n.12 (quoting *United States v. Erickson*, 561 F.3d 1150, 1159 (10th Cir. 2009)).

---

[7] Jury instructions in Section 1512(c)(2) cases arising out of the January 6 Capitol attack have defined "corruptly" in this manner. *See, e.g.*, *United States v. Reffitt*, No. 21-cr-32, ECF No. 119 at 25-26 (D.D.C. Mar. 7, 2022); *Robertson*, No. 21-cr-34, ECF No. 86 at 12-13 (Apr. 8, 2022).

The nexus requirement derives from the Supreme Court's decision in *Aguilar*, 515 U.S. 593. There, the defendant was convicted under Section 1503(a)'s omnibus clause for lying to an FBI agent "who might or might not testify before a grand jury." *Id.* at 600. That uncertainty was too attenuated to give rise to criminal liability because an obstructive act must "have a relationship in time, causation, or logic" with the official proceeding. *Id.* at 599-600. That was so, the Court held, because "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct." *Id.* at 599.

The Supreme Court's decision in *Arthur Andersen* applied the nexus requirement to Section 1512(b)(2)(A) offenses, which prohibit "knowingly" and "corruptly persuad[ing]" another to destroy documents in contemplation of an official proceeding. *See* 544 U.S. at 703. Observing that "[i]t is . . . one thing to say that a proceeding 'need not be pending or about to be instituted at the time of the offense,'" *id.* at 707; *see* 18 U.S.C. § 1512(f), the Supreme Court found it "quite another to say a proceeding need not even be foreseen," 544 U.S. at 708. To secure a conviction under Section 1512(b), therefore, the government must prove that the defendant has "in contemplation" a "particular official

52

proceeding in which [the tampered-with] documents might be material." *Id.*; *see also Marinello*, 138 S. Ct. at 1109 (applying nexus requirement to tax obstruction statute).

The same logic applies to Section 1512(c)(2). *See Ring*, 628 F.Supp.2d at 223 (applying nexus requirement to Section 1512(c)(2)).[8] Courts considering prosecutions brought under Section 1512(c)(2), moreover, have vacated convictions where the evidence failed to establish a sufficient nexus between the obstructive act and the alleged official proceeding. *See Young*, 916 F.3d at 387-89 (defendant's general awareness that the government might be investigating him was insufficiently connected to "a *specific* and *reasonably foreseeable* official proceeding"); *United States v. Friske*, 640 F.3d 1288, 1292-93 (11th Cir. 2011) (government failed to prove that the defendant who, at a friend's request, retrieved items that were subject to criminal forfeiture, "knew that the natural and probable result of his actions would be the obstruction of [the friend's] forfeiture proceeding").   To be sure,

---

[8] Although neither the Supreme Court nor this Court has extended the "nexus" requirement to Section 1512(c)(2), every court of appeals to have confronted the question has.  *See Young*, 916 F.3d at 386 (collecting cases).

establishing a "relationship in time, causation, or logic," *Aguilar*, 515 U.S. at 599, between the obstructive conduct and the official proceeding in the defendants' case, where they are alleged to have forced their way into the Capitol to impede Congress's certification of the Electoral College vote at the very moment that certification was underway, may not raise the borderline questions at issue in other cases.    But the nexus requirement nonetheless imposes a meaningful "restraint" on the "reach of a federal criminal [obstruction] statute." *Marinello*, 138 S. Ct. at 1106 (quoting *Aguilar*, 515 U.S. at 600).

3.   The *mens rea* and nexus requirements appropriately restrain Section 1512(c)(2)'s reach.   A defendant does not violate the statute unless, at minimum, he intentionally and with consciousness of wrongdoing obstructs (or attempts to obstruct) a particular, foreseeable proceeding that qualifies as an "official proceeding" under Section 1515(a)(1).

## C.    The district court incorrectly applied the rule of lenity.

Text, structure, history, and other tools of statutory interpretation unambiguously demonstrate that Section 1512(c)(2) prohibits any conduct that obstructs or impedes an official proceeding, and the *mens*

*rea* and nexus requirements ensure that the provision does not ensnare conduct that is "not inherently malign." *Arthur Andersen*, 544 U.S. at 704. Accordingly, the rule of lenity has no role to play, and the district court erred in concluding otherwise.

"When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S. 81, 83 (1955). That principle underlies the "venerable rule of lenity," *United States v. R.L.C.*, 503 U.S. 291, 305 (1992) (opinion of Souter, J.), which ensures that "legislatures and not courts" define criminal activity given the "seriousness of criminal penalties" and the fact that "criminal punishment usually represents the moral condemnation of the community." *United States v. Bass*, 404 U.S. 336, 348 (1971); *see Liparota v. United States*, 471 U.S. 419, 427 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.").

The rule of lenity, however, does not come into play when a law merely contains some degree of ambiguity or is difficult to decipher. The

rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotation marks omitted); *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998); *Young v. United States*, 943 F.3d 460, 464 (D.C. Cir. 2019). In short, some ambiguity is insufficient to trigger the rule of lenity; instead, a court must find "grievous ambiguity" that would otherwise compel guesswork. *See Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (internal quotation marks omitted). "Properly applied, the rule of lenity therefore rarely if ever plays a role because, as in other contexts, 'hard interpretive conundrums, even relating to complex rules, can often be solved.'" *Wooden v. United States*, 142 S. Ct. 1063, 1075 (2022) (Kavanaugh, J., concurring) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)).

The district court erroneously applied the rule of lenity in these cases. The district court referred to the "'grievous' ambiguity" standard when initially discussing the rule, *see* App.98, and found "a serious ambiguity" regarding the conduct that Section 1512(c)(2) reaches,

App.117.  But as noted above, the district court's interpretation of Section 1512(c)(2)'s scope places undue emphasis on a single word ("otherwise") and a single Supreme Court decision (*Begay*) that interpreted that word in an entirely different statute and statutory context.  A proper reading of Section 1512(c)(2)'s text, context, structure, and history demonstrates that Section 1512(c)(2) prohibits any corrupt conduct that intentionally obstructs or impedes an official proceeding, not merely where a "defendant ha[s] taken some action with respect to a document, record, or other object," App.117, to corruptly obstruct an official proceeding.

Simply put, the rule of lenity is "inapplicable" here.  *Puma*, 2022 WL 823079, at *12 n.4.  Congress made clear in Section 1512(c)(2) that it sought to protect the integrity of official proceedings—regardless of whether a defendant threatens such a proceeding by trying to interfere with the evidence before that tribunal or threatens the tribunal itself.  Any such distinction between these forms of obstruction produces the absurd result that a defendant who attempts to destroy a document being used or considered by a tribunal violates Section 1512(c) but a defendant who threatens those persons conducting that proceeding escapes criminal liability under the statute.  Not only does the rule of lenity not require

57

such an outcome, but such an application loses sight of a core value that animates the lenity rule: that defendants should be put on notice that their conduct is criminal and not be surprised when prosecuted. *See Wooden*, 142 S. Ct. at 1082 (Gorsuch, J., concurring) ("Lenity works to enforce the fair notice requirement by ensuring that an individual's liberty always prevails over ambiguous laws."). It would strain credulity for any defendant who was focused on stopping an official proceeding through unlawful means to profess surprise that his conduct could fall within a statute that makes it a crime to "obstruct[], influence[], or impede[] any official proceeding, or attempt[] to do so." 18 U.S.C. § 1512(c)(2). Confirming the absence of ambiguity—serious, grievous, or otherwise—is that despite Section 1512(c)(2)'s nearly 20-year existence, no other judge has found ambiguity in Section 1512(c)(2). *See, e.g., United States v. Reffitt*, No. 21-cr-32, 2022 WL 1404247, at *10 (D.D.C. May 4, 2022) (declining to apply the rule of lenity where defendant "helped lead a mob of rioters up the steps of the Capitol to overwhelm the police officers guarding Congress during its Joint Session" because his actions "fall under the 'ordinary acceptation' of § 1512(c)(2)'s terms") (quoting *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820)).

**D.    Even if Section 1512(c)(2) required that the obstructive act relate to documentary evidence, the defendants' conduct would be covered.**

Neither ordinary methods of statutory construction nor the rule of lenity supports limiting Section 1512(c)(2) to document-based obstructive conduct.  But even if Section 1512(c)(2) were so limited, it necessarily reaches beyond the direct evidence tampering already covered by Section 1512(c)(1) to include alternative ways of interfering with the consideration of documentary evidence—as happened here when the defendants impeded lawmakers' consideration of documents and records at the Electoral College vote certification proceeding.

At a minimum, Section 1512(c)(2) covers conduct that prevents the examination of documents, records, and other nontestimonial evidence in connection with an official proceeding.  Even assuming a focus on documentary evidence, the additional conduct that it would cover beyond Section 1512(c)(1) would include, for example, corruptly blocking the vehicle carrying the Electoral College vote certificates to the Capitol for congressional examination at the certification proceeding, which would not "alter[], destroy[], mutilate[], or conceal[]" that evidence under 1512(c)(1), but would plainly "obstruct[]" or "impede[]" the proceeding

with respect to that evidence under Section 1512(c)(2).  For similar reasons, Section 1512(c)(2) would likewise cover blocking a bus carrying lawmakers to the Capitol to examine the certificates at the certification proceeding.  And it just as readily covers displacing lawmakers from the House and Senate Chambers, where they would examine and discuss those certificates and other records.

The Electoral College vote certification is rooted in constitutional and federal statutory law that requires the creation and consideration of various documents; and that certification operates through a deliberate and legally prescribed assessment of ballots, lists, certificates, and, potentially, written objections.  *See supra* 6-8.  Evidence at trial would show that Congress had before it boxes carried into the House chamber at the beginning of the Joint Session that contained "certificates of votes from the electors of all 50 states plus the District of Columbia." App.197 (trial testimony in another January 6 case from the general counsel to the Secretary of the Senate).  Evidence would further show that, as rioters began to breach the restricted area around the Capitol building and grounds on January 6, 2021, legislators were evacuated from the House and Senate chambers, and the staff for the Secretary of the Senate

"took the ballot boxes and other paraphernalia of the proceeding" out of the chamber "to maintain custody of the ballots and make sure nothing happen[ed] to them." App.205.

Had the defendants sought to alter or destroy any of those documents, they would have violated Section 1512(c)(1). Here, the defendants allegedly sought to stop Members of Congress from reviewing those constitutionally and statutorily mandated documents at a proceeding to certify the results of the 2020 presidential election. Accordingly, even if a violation of Section 1512(c)(2) covered only obstructive behavior that prevents the consideration of documents, records, or other objects at an official proceeding, the defendants' alleged conduct—corruptly obstructing and impeding the examination of physical or documentary evidence at a congressional proceeding—states an offense.

## II.   Even under the district court's narrowed interpretation of Section 1512(c)(2), dismissal was improper.

Even if the district court's narrowed interpretation were correct, its dismissal of the indictment in the defendants' cases was premature.  An indictment satisfies the Federal Rules of Criminal Procedure if it contains "a plain, concise, and definite written statement of the essential

facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); *see United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976) (per curiam) (indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed"). An indictment complies with the Constitution where it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend" and enables a defendant "to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). An "indictment parroting the language of a federal criminal statute is often sufficient." *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007).

The Section 1512(c)(2) count in these cases satisfies those requirements. In each case, the Section 1512(c)(2) count "echoes the operative statutory text"—alleging the defendant corruptly obstructed a congressional proceeding, namely, the certification proceeding, "while also specifying the time and place of the offense," namely, January 6, 2021, in the District of Columbia. *See United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018); App.55, 85-86, 444. An indictment's validity does not turn on "whether it could have been made more definite

62

and certain," especially where, as here, the indictment identifies conduct that occurred on a single day in connection with an infamous attack on the U.S. Capitol such that it is "inconceivable" that "the defendants could possibly be misled as to the offense with which they st[and] charged." *United States v. Debrow*, 346 U.S. 374, 376, 378 (1953) (internal quotation marks omitted). In that respect, the Section 1512(c)(2) count here does not resemble the charges in *United States v. Hillie*, 227 F.Supp.3d 57 (D.D.C. 2017), on which the district court principally relied (App. 402, 407-08), and which involved allegations that the defendant merely "did something involving visual depictions of sexually explicit conduct of a minor . . . during periods of time that span two to three years," 227 F.Supp.3d at 72.[9]

---

[9] To the extent the defendants seek additional information about the Section 1512(c)(2) count, the proper channel is through a bill of particulars, Fed. R. Crim. P. 7(f), which "can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). Every case on which Miller relied below for the proposition that courts have found indictments insufficient in fact involved bills of particular. *See* App. 393.

Even under its narrowed interpretation of Section 1512(c)(2), the district court therefore erred by dismissing the Section 1512(c)(2) count before trial. Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits.*" Fed. R. Crim. P. 12(b)(1) (emphasis added). Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a full proffer of evidence," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005), which has not occurred here. Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010).

Although the defendants styled their challenges to Section 1512(c)(2)'s scope as an attack on the indictment's validity, the scope of conduct covered under Section 1512(c)(2) is distinct from whether the Section 1512(c)(2) counts adequately stated a violation. Here, the Section 1512(c)(2) counts put the defendants on notice as to the charges against which they must defend themselves, while also encompassing the

broader theory that a defendant violates Section 1512(c)(2) through any corrupt conduct that obstructs an official proceeding *and* the narrower theory that a defendant must "have taken some action with respect to a document," App.117, in order to violate Section 1512(c)(2). The district court's conclusion that only the narrower theory is a viable basis for conviction should not result in dismissal; instead, the district court would properly enforce that limitation by permitting conviction on that basis alone. *See United States v. Ali*, 885 F.Supp.2d 17, 33 (D.D.C. 2012) (limiting the government's aiding and abetting theory under 18 U.S.C. § 1651 to acts of piracy committed while the defendant was on the high seas but not dismissing the count), *reversed in part*, 718 F.3d 929 (D.C. Cir. 2013) (disagreeing with the district court's limitation). Critically, cases involving successful challenges by defendants concerning whether their *conduct*—and not merely the allegations against them—falls within the scope of the charged statute generally arise not under Rule 12 but following trials that establish the evidentiary record necessary to determine precisely what the defendant's conduct entailed. *See, e.g.*, *Marinello*, 138 S. Ct. at 1105 (considering scope of 26 U.S.C. § 7212(a) following defendant's conviction at trial); *Yates*, 574 U.S. at 534-35

65

(plurality opinion) (considering scope of the phrase "tangible object" in 18 U.S.C. § 1519 following defendant's conviction at trial); *Aguilar*, 515 U.S. at 597 (considering scope of omnibus clause in 18 U.S.C. § 1503(a) following the defendant's conviction at trial).

It is clear why that is so.   Even assuming the district court's interpretation of Section 1512(c)(2) were correct, the district court cannot determine whether the defendants' conduct meets that test until after a trial, at which the government is not limited to the indictment's allegations.   And at trial, the government could prove both that the certification proceeding involves lawmakers' consideration of certain documents and that the defendants "took" many "action[s]" with respect to Congress's consideration of those documents, thereby corruptly obstructing that certification proceeding.   *See supra* 9-10; 60-61.   In acting to thwart the commencement and operation of an official proceeding that involved such documents, the evidence would establish that the defendants violated Section 1512(c)(2) even under an interpretation of Section 1512(c)(2) that requires that a defendant took "some action with respect to a document, record, or other object in order

66

to corruptly obstruct, impede[,] or influence Congress's certification of the

electoral vote." App.118.

## CONCLUSION

For the foregoing reasons, the Court should reverse the dismissal

orders and remand the cases for further proceedings.

Respectfully submitted,

MATTHEW M. GRAVES
   United States Attorney
   District of Columbia

JOHN CRABB JR.
   Chief, Capitol Siege Section
   District of Columbia

KENNETH A. POLITE
   Assistant Attorney General
   Criminal Division

LISA H. MILLER
   Deputy     Assistant     Attorney
    General

/S/ JAMES I. PEARCE
   Appellate     Counsel,     Capitol
   Siege Section
   Criminal Division
   U.S. Department of Justice
   950 Pennsylvania Ave., N.W.
   Suite 1243
   Washington, DC 20530
   (202) 532-4991
   James.Pearce@usdoj.gov

August 8, 2022

# CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d), the undersigned counsel of record certifies that the foregoing Brief for the United States was this day served upon counsel for appellees, by notice of electronic filing with the District of Columbia Circuit CM/ECF system.

DATED: AUGUST 8, 2022

> s/ James I. Pearce
> JAMES I. PEARCE
>> Appellate Counsel, Capitol Siege Section
>> Criminal Division
>> U.S. Department of Justice
>> 950 Pennsylvania Ave., N.W.
>> Suite 1243
>> Washington, DC 20530
>> (202) 532-4991
>> James.Pearce@usdoj.gov

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 12,996 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Century 14-point font in text and Century 14-point font in footnotes.

3. This brief complies with the privacy redaction requirement of Fed R. App. 25(a)(5) because it contains no personal data identifiers.

4. The digital version electronically filed with the Court on this day is an exact copy of the written document to be sent to the Clerk; and

5. This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security, version 10.7, which is continuously updated, and according to that program is free of viruses.

DATED: AUGUST 8, 2022

s/ James I. Pearce
JAMES I. PEARCE
    Appellate Counsel, Capitol Siege Section
    U.S. Department of Justice

# STATUTORY ADDENDUM

# TABLE OF CONTENTS

18 U.S.C. § 1512.................................................................Add. 1

18 U.S.C. § 1515.................................................................Add. 5

## 18 U.S.C. § 1512. Tampering with a witness, victim, or an informant

(a)  (1)    Whoever kills or attempts to kill another person, with intent to--

        (A)    prevent the attendance or testimony of any person in an official proceeding;

        (B)    prevent the production of a record, document, or other object, in an official proceeding; or

        (C)    prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (3).

(2)    Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to--

        (A)    influence, delay, or prevent the testimony of any person in an official proceeding;

        (B)    cause or induce any person to—

            (i)    withhold testimony, or withhold a record, document, or other object, from an official proceeding;

            (ii)    alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official proceeding;

            (iii)    evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

            (iv)    be absent from an official proceeding to which that person has been summoned by legal process; or

(C)   hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;

shall be punished as provided in paragraph (3).

(3)   The punishment for an offense under this subsection is--

(A)   in the case of a killing, the punishment provided in sections 1111 and 1112;
(B)   in the case of—

(i)    an attempt to murder; or
(ii)   the use or attempted use of physical force against any person;

imprisonment for not more than 30 years; and
(C)   in the case of the threat of use of physical force against any person, imprisonment for not more than 20 years.

(b)   Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--

(1)   influence, delay, or prevent the testimony of any person in an official proceeding;
(2)   cause or induce any person to--

(A)   withhold testimony, or withhold a record, document, or other object, from an official proceeding;
(B)   alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

Add. 2

   (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

   (D) be absent from an official proceeding to which such person has been summoned by legal process; or

  (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation[,] supervised release, parole, or release pending judicial proceedings;

shall be fined under this title or imprisoned not more than 20 years, or both.

(c) Whoever corruptly--

  (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

  (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

(d) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from--

  (1) attending or testifying in an official proceeding;

  (2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation1 supervised release, parole, or release pending judicial proceedings;

  (3) arresting or seeking the arrest of another person in connection with a Federal offense; or

(4)     causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding;

or attempts to do so, shall be fined under this title or imprisoned not more than 3 years, or both.

(e)     In a prosecution for an offense under this section, it is an affirmative defense, as to which the defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the defendant's sole intention was to encourage, induce, or cause the other person to testify truthfully.

(f)     For the purposes of this section--

(1)     an official proceeding need not be pending or about to be instituted at the time of the offense; and
(2)     the testimony, or the record, document, or other object need not be admissible in evidence or free of a claim of privilege.

(g)     In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance--

(1)     that the official proceeding before a judge, court, magistrate judge, grand jury, or government agency is before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a Federal grand jury, or a Federal Government agency; or
(2)     that the judge is a judge of the United States or that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant.

(h)     There is extraterritorial Federal jurisdiction over an offense under this section.

(i)    A prosecution under this section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred.

(j)    If the offense under this section occurs in connection with a trial of a criminal case, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

(k)    Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

## 18 U.S.C. § 1515. Definitions for certain provisions; general provision

(a)    As used in sections 1512 and 1513 of this title and in this section--

    (1)    the term "official proceeding" means--

        (A)    a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

        (B)    a proceeding before the Congress;

        (C)    a proceeding before a Federal Government agency which is authorized by law; or

        (D)    a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce;

Add. 5

(2)    the term "physical force" means physical action against another, and includes confinement;

(3)    the term "misleading conduct" means—

(A)    knowingly making a false statement;

(B)    intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false impression by such statement;

(C)    with intent to mislead, knowingly submitting or inviting reliance on a writing or recording that is false, forged, altered, or otherwise lacking in authenticity;

(D)    with intent to mislead, knowingly submitting or inviting reliance on a sample, specimen, map, photograph, boundary mark, or other object that is misleading in a material respect; or

(E)    knowingly using a trick, scheme, or device with intent to mislead;

(4)    the term "law enforcement officer" means an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant—

(A)    authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense; or

(B)    serving as a probation or pretrial services officer under this title;

(5)    the term "bodily injury" means—

(A)    a cut, abrasion, bruise, burn, or disfigurement;

(B)    physical pain;

(C)    illness;

Add. 6

      (D)    impairment of the function of a bodily member, organ, or mental faculty; or

      (E)     any other injury to the body, no matter how temporary; and

    (6)    the term "corruptly persuades" does not include conduct which would be misleading conduct but for a lack of a state of mind.

(b)    As used in section 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

(c)    This chapter does not prohibit or punish the providing of lawful, bona fide, legal representation services in connection with or anticipation of an official proceeding.