# PETITION FOR PANEL REHEARING
# UNDER APPELLATE RULE 40

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

## NO'S. 22-3038, 22-3039 & 22-3041

———————

UNITED STATES OF AMERICA,
*Appellant*

v.

JOSEPH W. FISCHER, EDWARD LANG, and GARRET MILLER,
*Appellees,*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
D. CT. NO'S. 1:21-CR-234, 1:21-CR-119, 1:21-CR-53 (NICHOLS, J.)

———————

HEIDI R. FREESE, ESQ.
Federal Public Defender
Middle District of Pennsylvania

FREDERICK W. ULRICH, ESQ.
Asst. Federal Public Defender

AMANDA R. GAYNOR, ESQ.
Staff Attorney
RYAN F. SHELLEY, ESQ.
Staff Attorney

100 Chestnut Street, 3rd Floor
Harrisburg, PA 17101
717-782-2237

F. CLINTON BRODEN, ESQ.
Broden & Mickelsen
2600 State Street
Dallas, TX 75204
214-720-9552

NICHOLAS D. SMITH, ESQ.
David B. Smith, PLLC
1123 Broadway, Ste. 909
New York, NY 10010

STEVEN A. METCALF, II, ESQ.
Metcalf & Metcalf, P.C.
99 Park Avenue
New York, NY 10016

*Attorneys for Appellees*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Based on District of Columbia Circuit Rule 28(a)(1), the undersigned certifies:

## A.    Parties and Amici

The parties that appeared in the district court and that are now before this Court are the United States (Appellant) and Joseph Fischer, Edward Lang, and Garret Miller (Appellees).  There are no amici curiae or intervenors.

## B.    Rulings Under Review

The current petition seeks panel rehearing of the divided judgment and opinions reversing the orders of the district court that dismissed counts under 18 U.S.C. § 1512(c)(2).  *See United States v. Fischer, et al.*, No's 22-3038, 22-3039, 22-3041.  The government originally sought review of the orders by The Honorable Carl J. Nichols at:

- *United States v. Miller*, No. 21-cr-119, ECF No. 72, 2022 WL 823070 (D.D.C. Mar. 7, 2022) (App.90-118), motion for reconsideration denied by ECF 86, 2022 WL 1718984 (D.D.C. May 27, 2022) (App.397-408);

• *United States v. Fischer*, No. 21-cr-234, ECF No. 64, 2022 WL 782413 (D.D.C. Mar. 15, 2022) (App.502-11), motion for reconsideration denied by Minute Order (May 30, 2022) (App.421); and

• *United States v. Lang*, No. 21-cr-53, Minute Order (D.D.C. June 7, 2022) (App.12).

### C.    Related Cases

The only procedurally related cases are the three that this Court consolidated.  That said, many defendants prosecuted in the United States District Court for the District of Columbia for offenses under 18 U.S.C. § 1512(c)(2) and in connection with January 6th have raised "substantially the same or similar issues."  *See* D.C. Cir. R. 28(a)(1)(C). One of those cases is currently before a different panel of this Court. *See United States v. Robertson*, No. 22-3062.  Another is *United States v. Hale-Cusanelli,* No. 22-3075. Counsel is unaware of any other cases presenting "substantially the same or similar issues" pending before this Court.

# TABLE OF CONTENTS

Table Of Authorities ........................................................................ iv

I.    Preliminary Statement in Support of Panel Rehearing .................... 1

II.   Background ................................................................................ 2

      A.    District Court proceedings ................................................ 2

      B.    The Appeal ..................................................................... 4

            1. The Lead Opinion ..................................................... 4

            2. The Concurring Opinion ............................................. 6

            3. The Dissenting Opinion .............................................. 8

III.  Reasons for Rehearing ............................................................... 10

      A.    The judgment—a two to one reversal of the district court's
            order—does not reflect the actual positions of the three
            opinions. ....................................................................... 10

IV.   Conclusion ................................................................................ 16

Certificate of Compliance

Certificate of Service

Exhibit A

## TABLE OF AUTHORITIES

**Cases**

*Marks v. United States*,
  430 U.S. 188 (1977) .......................................................................... 2, 14

*Reagan v. Abourezk*,
  484 U.S. 1 (1987) ................................................................................... 15

*United States v. Brooks*,
  610 F.3d 1186 (9th Cir. 2010) ............................................................. 14

*United States v. Miller*,
  589 F. Supp. 3d 60 (D.D.C. 2022) ........................................................ 3

*United States v. Nordean, et al.*,
  No. 1:21-CR-00175 ............................................................................... 11

*Wooden v. United States*,
  142 S. Ct. 1063 (2022) ........................................................................... 5

**Statutes**

18 U.S.C. §1512(c) ..........................................1, 2, 3, 4, 7, 8, 10, 12, 13, 14

**Other Authorities**

Tristan Justice, *Tom Cotton Confronts Deputy Attorney General Over
DOJ Double Standards*, The Federalist (April 19, 2023) ..................... 13

Forbes Breaking News, *Tom Cotton Asks Deputy AG If DOJ Will
Investigate 'Democratic Mob' Disrupting Tennessee Legislature*,
YouTube (Apr. 19, 2023),
https://www.youtube.com/watch?v=DAQ1g5hC824&t=159s. ............... 13

## I.     Preliminary Statement in Support of Panel Rehearing

Panel rehearing is necessary because no two opinions constitute a plurality on either of the dispositive legal issues:  Section 1512(c)(2)'s mens rea and actus rei elements.  Judge Walker agreed with Judge Katsas' dissenting opinion on the vagueness and overbreadth of Section 1512(c)(2)'s actus rei.  *See United States v. Fischer, et al.*, No. 22-3038, slip op. (Walker J., concurring at 1-2, 19) ("Concurring Op.").  But he joined Judge Pan's lead opinion, conditioned on his narrowing definition of Section 1512(c)(2)'s mens rea.  *See* (Concurring Op. at 22 n.10).  In other words, Judge Walker viewed his definition of the mens rea—acting corruptly—as necessary to narrow the reach of an otherwise overbroad and vague provision.

Yet Judge Pan's lead opinion did not address the merits of that definition.  In her view, the mens rea element was not before the court. *See United States v. Fischer, et al.*, No. 22-3038, slip op. (Pan, J., lead op. at 19-20) ("Lead Op.").  *Id.*[1]  And the lead opinion rejected that

---

[1] The mens rea element, however, constituted the lynchpin of the government's construction of Section 1512(c)(2).  And for this reason, the parties spent considerable time addressing it.  *See* Doc. 1958170 at 63-69 (Appellant's brief); Doc. 1963748 at 44-48 (Appellees' brief); Doc. 1967589 at 32-37 (Appellant's reply brief).

Judge Walker's concurrence had any precedential value.  *See* (Lead Op. at 21 n.5) (declining to find as applicable the prudential rule in *Marks v. United States*, 430 U.S. 188 (1977)).[2]

Without satisfaction of the condition necessary for joinder of the lead opinion, Judge Walker stated that he would join Judge Katsas' dissenting opinion.  *See* (Concurring Op. at 22 n.10).  That condition was not satisfied.  The Panel should therefore rehear the case to amend the opinions to reflect Judge Walker's joinder with Judge Katsas, that the Panel was equally divided, or that Judge Walker's concurrence is the holding of the Court.  In either of the first two events, the judgment should denote affirmance of the district court's order.

## II.     Background

### A.     District Court proceedings

The government indicted Mr. Fisher and Appellees Miller and Lang for their roles in the January 6th demonstrations at the Capitol

---

[2] Indeed, a different Panel of this Court has ordered briefing on "*Fischer's* precedential effect, if any" on the mens rea element in Section 1512(c)(2).  *See United States v. Robertson*, No. 22-3062, Doc. 1994482.  This effectively subjects Judge Walker's concurrence to a collateral challenge.  As a result, the Appellees might not receive the benefit of Judge Walker's mens rea definition.

building.  The charges included an offense under Section 1512(c) of the

Victim, Witness, or Informant Tampering statute, 18 U.S.C. § 1512,

which Congress enacted to criminalize the obstruction of its legislative

inquiries and investigations.  Section 1512(c) criminalizes evidence-

impairment crimes in connection with, among other things, "a

proceeding before the Congress."  Before trial, Fischer, Miller, and

Lang, moved to dismiss the obstruction count.  They argued that their

conduct fell outside the purview of Section 1512(c).  *See* Lead Op. at 6.

The district court agreed.  The court found that the text of Section

1512(c) supported three possible readings, but only two of them were

plausible.  *United States v. Miller*, 589 F. Supp. 3d 60, 67 (D.D.C. 2022).

In this regard, the court observed that subsection (c)(2) could be read as

either prohibiting any act that obstructs an official proceeding or as a

residual clause, reaching only acts similar to ones listed in (c)(1).  *See*

*id*. at 67-72.  Given the text, structure, historical background, and

legislative history of Section 1512, as well as the rule of lenity, the court

found that the latter reading applied.  *See id*. at 66, 72-76.  The court

thus held that the acts of Fischer, Miller, and Lang fell outside the

reach of Section 1512(c)(2).

The government appealed.

## B.    The Appeal

On appeal, this Court—in a deeply divided set of opinions—

reversed.

### 1.    The Lead Opinion

In the lead opinion, Judge Pan conceded that there was no

precedent for applying Section 1512(c) to the conduct unrelated to

evidence impairment at issue, and that such application was beyond

Congress' expressed purpose in amending that section.  *See* (Lead Op.

at 16, 30-31).  Yet Judge Pan viewed the terms in Section 1512(c)(2) to

be clear, unambiguous, and supporting a broad reading.  *See id.* at 10-

12.  Indeed, she characterized any argument to the contrary as

"implausible" based on Congress' chosen language.  *See id.* at 26.

Consistent with this view, Judge Pan declined to find any inconsistency

with the statutory context, historical development, and legislative

history.  *See id.* at 30-37.  And absent a "grievous ambiguity," Judge

Pan did not believe the rule of lenity had any role to play. *See id*. at 37.[3]

As to the government's argument that the mens rea of "corruptly" limited the statutory reach, Judge Pan demurred. *See id*. at 19. At the outset, she observed that the district court declined to interpret corruptly, the parties only discussed this issue "peripherally," and no one requested the standard adopted by Judge Walker's concurrence. *See id*. 17, 19.[4] For those reasons and because the assault allegations, in her view, satisfied *any* mens rea standard, Judge Pan did not reach the issue. And she offered that the definition adopted in Judge Walker's concurrence should, for the same reasons, await briefing in a

---

[3] Parenthetically, it's far from clear that ambiguity must meet some sort of threshold standard of "grievousness" before the rule of lenity applies. *See Wooden v. United States*, 142 S. Ct. 1063, 1074, 1084-86 (2022) (Gorsuch and Sotomayor, J.J., concurring) (tracing the history of using "grievous" when describing an ambiguity).

[4] Although the district court declined to define corruptly, it noted that there was no consistent definition by other judges. *See* App. 405 n.3. And, as important, the court "conclude[ed] that the common meanings of corruptly are sufficiently capacious so as not to limit or clarify the actus reus charged in the Indictment." *Id*. In any event, as noted above, the parties briefed the issue and Appellees cited the definition adopted by the concurring opinion. *See supra* n.1 & Doc.#1963748 at 47 (Appellees' brief).

different case. *See id*. at 19-20. Finally, Judge Pan emphasized that the concurring opinion warranted no precedential effect. *See id*. at 21 n.5.

### 2. The Concurring Opinion

Judge Walker concurred in the judgment. *See* (Concurring Op. at 1). In his assessment, the lead opinion's rationale was "not enough to uphold the indictments" because it declined to define Section 1512(c)'s mens rea element. *See id*. at 22 n. 10. Judge Walker repeatedly characterized the government's construction of Section 1512(c)(2)'s act and mental state as breathtaking in scope, subjecting it to vagueness and overbreadth concerns. *See id*. at 1-2, 10, 14, 19, 20, 21. On this point, Judge Walker's views aligned with those of Judge Katsas' dissent. But Judge Walker differed with the dissent on the best way to address those problems. In Judge Walker's judgment, the most efficient way to narrow the breathtaking scope resulting from the lead opinion's construction was through the mens rea element—corruptly. *See id*. at 2, 10, 13-16, 19, 21.

In particular, Judge Walker defined corruptly as requiring "proof that the defendant not only knew he was obtaining an 'unlawful benefit'

but that his 'objective' or 'purpose' was to obtain that unlawful benefit."
*Id*. at 13. Judge Walker explained that narrowing the mens rea makes
sense of subsection (c)(2)'s placement within the statutory scheme. *See*
*id*. at 13, 15. And it avoided some, although not all, of the statutory
surplusage problems that exist with the dissenting opinion's
construction of the actus reus. *See id*. at 17-18. Finally, Judge Walker
emphasized the conditional nature of his concurrence:

- "Though the district court did not reach the meaning of 'corruptly,' we have no choice. As I will explain . . . *my vote to uphold the indictments depends on it*."

- "Because I read 'corruptly' as courts have read it for hundreds of years—and *only* because I read it that way—I concur in the Court's judgment."

- "*[M]y reading of 'corruptly' is necessary to my vote to join* the lead opinion's proposed holding on 'obstructs, influences, or impedes' an 'official proceeding.'"

- "*If I did not read 'corruptly' narrowly, I would join the dissenting opinion*. That's because giving 'corruptly' its narrow, long-established meaning resolves otherwise compelling structural arguments for affirming the district court, as well as the Defendants' vagueness concerns."

- "[I]n my view, the rationale in the lead opinion is not enough to uphold the indictments."

*See id*. at 3 n.1, 22 & n.10 (emphasis added).

### 3.    The Dissenting Opinion

For his part, Judge Katsas concluded that both the government and lead opinion dubiously read the term "otherwise" in Section 1512(c)(2) to mean in a different manner, as opposed to in a manner like the list in subsection (c)(1).  *See* (Dissenting Op. at 1).  Such reading, Judge Katsas explained, rendered subsection (c)(1) ineffective.  *See id*. And it made 1512(c) implausibly broad and unconstitutional in many applications.  *See id*. at 2.

As Judge Katsas observed, the meaning of "otherwise" in subsection (c)(2) cannot be determined in isolation but must be drawn from the context in which it's used.  *Id*. at 5.  To begin, Judge Katsas relied on normal linguistic usage that the verbs preceding "otherwise" help frame and narrow its meaning.  *Id*. at 6.  This usage is consistent with textualism's goal, that is, not to explore definitional possibilities but to assess how an ordinary person would understand the phrases Congress strung together.  *Id*. at 7.

This goal also coincides with several canons of construction. Those canons include avoiding surplusage by giving effect to every clause and word.  *Id*. at 7-8.  Another canon, *ejusdem generis*, cautions

8

that when general words follow specific ones, the general words are construed as embracing only objects like those enumerated. *Id.* at 8, 24-25. Similarly, the canon of *nocitur a sociis* provides that "a word is given precise content by the neighboring words with which it is associated." *Id.* at 8, 24-25 (citations omitted). Here, "otherwise" takes meaning from the specific examples preceding it. *Id.* As Judge Katsas recognized, the expansive interpretation by the government and the lead opinion "would swallow up various other Chapter 73 offenses outside of Section 1512." *Id.* at 20.

Judge Katsas next noted that the statutory history surrounding Section 1512 and its application in the courts went against the lead opinion's unprecedented expansion of its reach. *See id.* at 27-28. Given the ambiguity surrounding the statutory reach and unconstitutional breadth, Judge Katsas believed that the rule of lenity applied. *See id.* at 17, 28-29.

Finally, as for the approach suggested in the concurrence, Judge Katsas lauded the goal of narrowing the government and lead opinion's breathtaking and untenable construction of the statute. *See id.* at 36. But in Judge Katsas' view, the heightened mens rea requirement that

9

the concurrence proposed would not alter the improbable breadth of the actus rei. *Id.* In other words, Judge Katsas viewed the unlawful-benefit mens rea definition as necessary but not sufficient. That Judges Katsas and Walker agreed that "corruptly" irreducibly entails an intent to secure some unlawful benefit is reflected in the concurring opinion. Concurring Op. at 10 n. 5 ("The dissenting opinion says a defendant can act 'corruptly' *only if* the benefit he intends to procure is 'financial, professional, or exculpatory advantage.'") (emphasis added).

## III. Reasons for Rehearing

### A. The judgment—a two to one reversal of the district court's order—does not reflect the actual positions of the three opinions.

To start, Judge Walker's concurrence was, as noted above, conditional. *See* (Concurring Op. at 3 n.1, 22 & n.10). His condition was the acceptance, presumably by someone, of his heightened mens rea definition for "corruptly." As he emphasized, absent a mens rea that a "defendant not only knew he was obtaining an unlawful benefit but that his objective or purpose was to obtain that unlawful benefit," Section 1512(c)(2) was breathtakingly broad and vague. *Id.* at 1-2, 13.

10

Yet it's clear from Judge Pan's lead opinion that she refused to accept the definition of "corruptly" proposed in Judge Walker's concurrence. *See* (Lead Op. at 19-20, 21 n.5). She viewed that issue as outside the scope of the appeal. *See id.* Even if Judge Walker conditioned his joinder on the acceptance of his definition of corruptly through application of the *Marks* rule, Judge Pan's lead opinion rejected that too. *See id.* at 21 n.5. And at least one district court judge has sided with the lead opinion on that point. *See, e.g.*, *United States v. Nordean, et al.*, No. 1:21-CR-00175, (Ex. "A" Kelly, J. ruling) (determining that the district court will instruct the jury with a reading of § 1512(c)(2) rejected by Judges Walker and Katsas).

So with no acceptance of Judge Walker's concurrence, his expressed preference would be to join the dissent. *See* (Concurring Op. at 22 n.10). This position has more commonality than the judgment acknowledges, as the illustration below reveals:

### VIEWS OF SECTION 1512(c)(2)'s PERMISSIBLE SCOPE



Both the concurrence and dissent agreed that the government, and by extension, the lead opinion's construction of Section 1512(c)(2)'s act rei would create a breathtakingly broad, vague, and unconstitutional provision.  *Compare* (Concurring Op. at 1-2, 10, 14, 19,

20 & 21) *with* (Dissenting Op. at 2, 17, 29, 31, 36 & 37).[5]  Both opinions

agreed that the required mens rea under Section 1512(c)(2) was before

this Court.  *Compare* (Concurring Op. at 3 n.1) *with* (Dissenting Op. at

31-36).  And both opinions agreed that the required mens rea for acting

corruptly includes the improper or unlawful benefit test.  *Compare*

(Concurring Op. at 15) *with* (Dissenting Op. at 35).

Where they part ways is with the best method to rein in an

otherwise overbroad, vague, and unconstitutional provision.  Judge

Walker's concurrence would heighten the mens rea by defining

corruptly to require that "[a] defendant intend an unlawful benefit that

he knows is unlawful."  (Concurring Op. at 15).  While Judge Katsas

believes that an "unlawful benefit" mens rea is necessary, he viewed it

as insufficient to limit the statute's unconstitutional reach.  And so he

---

[5] Indeed, the very concerns expressed by Judge Katsas in his dissent, *see* (Dissenting Op. at 31), have been realized.  Senator Cotton has begun probing why Justice Department officials have not launched criminal investigations under Section 1512(c)(2) for those protesting gun violence at the Tennessee Capitol and those protesting Representative Jordan's House Judiciary Committee hearing in New York City.  *See* Tristan Justice, *Tom Cotton Confronts Deputy Attorney General Over DOJ Double Standards*, The Federalist (April 19, 2023); Forbes Breaking News, *Tom Cotton Asks Deputy AG If DOJ Will Investigate 'Democratic Mob' Disrupting Tennessee Legislature*, YouTube (Apr. 19, 2023), https://www.youtube.com/watch?v=DAQ1g5hC824&t=159s.

would construe the actus rei consistent with the other language in the subsection, the statute's history, and existing precedent.[6]  This construction thus limits the reach of Section 1512(c)(2) to efforts to impair physical or other kinds of evidence.  *See* (Dissenting Op. at 15).

What is apparent from the text and illustration above is that the concurrence and dissent view Section 1512(c) as unconstitutionally vague and overbroad.  And neither shares the views of the lead opinion.  As a result, the judgment should be amended to reflect a two-one affirmance.

Alternatively, the opinions could be viewed as exclusive of each other.  For example, in her lead opinion Judge Pan found nothing wrong with the scope of the actus rei in Section 1512(c)(2).  But she declined to reach the question of the required mens rea, as she believed that it was beyond the scope of the appeal.  Judge Walker, however, thought that the mens rea issue was central to resolving the scope of the statute.[7]

---

[6] *Accord United States v. Brooks*, 610 F.3d 1186, 1200-01 (9th Cir. 2010) (construing "otherwise" in the Sentencing Guidelines as relating to the examples in the preceding subsection).

[7] The Court could alternatively consider amending the judgment to clarify that Judge Walker's concurrence is the Court's holding.  *See* (Concurring Op. at 22 n.10) (explaining why the concurring opinion may be controlling under *Marks*).

And his opinion depends on that perspective. On the opposite end, Judge Katsas hinged his opinion on a narrowing construction of Section 1512(c)(2)'s actus rei. This divergence of opinion has many—if not all—of the hallmarks of an equally divided panel. In which case, the order below should be affirmed. *E.g.*, *Reagan v. Abourezk*, 484 U.S. 1, 2 (1987) (affirming the judgment in the lower court by a three-three equally divided court because of Justice Blackmun and Justice Scalia's recusals, as well as Justice Powell's recent retirement from the Court).[8]

---

[8] An equally divided three-judge panel is rare, but it can occur.

## IV.  Conclusion

For these reasons, this Honorable Court should grant the petition for panel rehearing, vacate the judgment, and amend it to reflect affirmance of the district court's decision.

Respectfully submitted,

/s/ Frederick W. Ulrich
FREDERICK W. ULRICH, ESQ.
Asst. Federal Public Defender

AMANDA R. GAYNOR, ESQ.
Staff Attorney

RYAN F. SHELLEY, ESQ.
Staff Attorney

100 Chestnut Street, Suite 306
Harrisburg, PA 17101
717-782-2237

/s/ F. Clinton Broden
F. CLINTON BRODEN, ESQ.
Broden & Mickelsen
2600 State Street
Dallas, TX 75204
214-720-9552

/s/ Nicholas D. Smith
NICHOLAS D. SMITH, ESQ.
David B. Smith, PLLC
1123 Broadway, Ste. 909
New York, NY 10010

/s/ Steven A. Metcalf
STEVEN A. METCALF, II, ESQ.
Metcalf & Metcalf, P.C.
99 Park Avenue
New York, NY 10016

Dated:  April 25, 2023

16

## CERTIFICATE OF COMPLIANCE

I, Frederick W. Ulrich, Esquire, of the Federal Public Defender's Office, certify, in compliance with the Federal Rules of Appellate Procedure and the Third Circuit Local Appellate Rules, that: (i) I am a member in good standing of the bar of this Court; (ii) the text of the electronic version of this petition is identical to the text of the paper copies submitted; (iii) no virus was detected in the electronic version of this petition when a virus check was performed using Trend Micro Apex One; and (iv) this petition complies with applicable type-volume requirements because it contains 2,784 words, less than the 3,900 word limit.

Date:April 25, 2023                    */s/ Frederick W. Ulrich*
                                       FREDERICK W. ULRICH, ESQ.
                                       Asst. Federal Public Defender

## CERTIFICATE OF SERVICE

I, Frederick W. Ulrich, Esquire, of the Federal Public Defender's

Office, certify that I served on this date a copy of the Petition for Panel

Rehearing Under Appellate Rule 40 by Electronic Case Filing,

addressed to:

JAMES I. PEARCE, ESQUIRE
U.S. Department of Justice
*james.pearce@usdoj.gov*


*/s/ Frederick W. Ulrich*                */s/ F. Clinton Broden*
FREDERICK W. ULRICH, ESQ.              F. CLINTON BRODEN, ESQ.
Asst. Federal Public Defender          Broden & Mickelsen


                                        */s/ Nicholas D. Smith*
                                        NICHOLAS D. SMITH, ESQ.
                                        David B. Smith, PLLC


                                        */s/ Steven A. Metcalf*
                                        STEVEN A. METCALF, II, ESQ.
                                        Metcalf & Metcalf, P.C.


Date:  April 25, 2023